## CAREY v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1920.)

No. 5392.

1. **Prostitution ⊙⇒3—"Purpose" equivalent to "intent" in indictment under White Slave Traffic Act.**

   An indictment for violation of Mann Act, §§ 2, 3 (Comp. St. §§ 8813, 8814), by causing a woman to be transported from one state into another "for the purpose of having unlawful sexual intercourse," *held* to sufficiently aver intent.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Intent; Purpose.]

2. **Prostitution ⊙⇒4—Conviction for violation of White Slave Traffic Act sustained by evidence.**

   Evidence *held* to sustain a conviction for violation of Mann Act, § 2 (Comp. St. § 8813), by transporting a woman in interstate commerce with intent and purpose that she should engage in immoral practice.

3. **Criminal law ⊙⇒406(6)—Admissions of relevant facts competent.**

   On trial of defendant for violation of Mann Act (Comp. St. §§ 8812–8819) by persuading and transporting a woman in interstate commerce for the purpose of illicit intercourse, subsequent admissions by defendant of the paternity of the woman's child *held* admissible in evidence.

4. **Witnesses ⊙⇒352—Impeaching testimony held inadmissible.**

   A letter to defendant, containing a threat by the attorney for the prosecuting witness in a civil case to institute criminal proceedings, *held* not admissible to impeach the witness, not shown to have had any knowledge of it.

5. **Prostitution ⊙⇒1—White Slave Traffic Act; illicit intercourse need not be sole purpose of transportation.**

   It is sufficient to warrant conviction for violation of Mann Act (Comp. St. §§ 8812–8819), if one of defendant's purposes, among others, in transporting a woman in interstate commerce, was to engage in illicit intercourse.

6. **Criminal law ⊙⇒855(8)—Statement by juror after close of trial not misconduct.**

   The action of a juror in congratulating the prosecuting witness on the verdict, after the close of the trial and discharge of the jury, *held* not improper.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Criminal prosecution by the United States against George L. Carey. Judgment of conviction, and defendant brings error. Affirmed.

F. S. Howell, of Omaha, Neb. (Ed. P. Smith and W. A. Schall, both of Omaha, Neb., on the brief), for plaintiff in error.

T. S. Allen, U. S. Atty., of Lincoln, Neb. (F. A. Peterson, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

STONE, Circuit Judge. Error from conviction on four of seven counts of an indictment charging violation of the Mann Act. Of the four counts upon which the verdict rested, the first two related to a

trip 'from Bancroft, Neb., to Sioux City, Iowa, and the last two related to a trip from Sioux City, Iowa, to Omaha, Neb. In each instance one count was for persuading the woman to go for the purpose of unlawful sexual intercourse, while the other count was for obtaining or assisting to obtain the transportation for the trip with the same unlawful purpose. The sentence was three months' imprisonment.

Plaintiff in error challenges his conviction upon these grounds: First, insufficiency of the indictment; second, insufficiency of the evidence; third, erroneous admission of testimony; fourth, erroneous exclusion of evidence; fifth, erroneous refusal of instructions; and, sixth, misconduct of a juror.

[1] The claim as to insufficiency of the indictment is that the counts do not allege the necessary criminal intent. The argument is that these counts are based upon sections 2 and 3 of the act (36 Stat. 825 [Comp. St. §§ 8813, 8814]), which require that the transportation shall be "with the intent and purpose on the part of such person" that the woman shall engage in immoral practice, and that these counts of the indictment merely alleged that the transportation was "for the purpose of having unlawful sexual intercourse." While these sections use the words "intent and purpose," we are unable to draw any distinction between their use therein. If the transportation was for the purpose of unlawful intercourse, it must have been with the intent to have such intercourse. The indictment is sufficient.

[2] The challenge of the sufficiency of the evidence is based on the claim that there was no substantial evidence that either of the journeys was undertaken with the intent to engage in sexual intercourse. The first journey covered by the conviction was on December 15, 1915, from Bancroft, Neb., to Sioux City, Iowa; and the second such journey was March 18, 1916, from Sioux City, Iowa, to Omaha, Neb. An outline of the evidence covering the relations of the parties up to and including the trips here involved is as follows:

Defendant practiced dentistry in Remsen, Iowa, where he met the girl July 4, 1914. August 23d of that year they became engaged to be married, and upon September 6th following occurred the first transgression. Others followed frequently until February, 1915, when he removed temporarily to Marcus, Iowa, and shortly afterwards to Bancroft, Neb. April 4, 1915, in response to his request, she met him in Sioux City, where he registered them at the hotel as man and wife, and they occupied the same room overnight; the accused paying her railroad fare and all expenses. This was repeated in July, 1915. In August following, in response to request from accused, she went to Bancroft, where he then resided; he paying expenses of the trip. The former practice was repeated there. The trips to Sioux City were continued in September, October, and November following. Late in November she discovered that she was pregnant, and in December wrote to him of her condition. Receiving no answer to her letter, she went to Bancroft to induce him to marry her, arriving there December 15, 1915.

With this visit begin the circumstances connected with the trip

to Sioux City, covered by the first charges under which he was convicted. Fearing her presence in Bancroft would excite attention and lead to injury of his reputation, he told her to go to Sioux City, directing that "I should go to the hotel, and he would be up there and stay with me until morning," and would talk over what was to be done. Upon his arrival in Sioux City they went to the hotel, he registering them as man and wife, occupied the same room, and, after repeatedly refusing to marry her and talking over what was to be done to relieve her condition, again possessed her. He bought her ticket to Sioux City and paid all other expenses. Just after Christmas, 1915, at his request, she met him at Sioux City for a part of a day to discuss her steps for her protection, and he then advised her going to a hospital at Omaha for her confinement. On this occasion they did not take a room at the hotel or misconduct themselves.

We now come to the second trip covered by the conviction. About March 10 or 11, 1916, he inclosed money for railway fare in a letter requesting her to go from Sioux City to Omaha, saying that he would board the same train at Bancroft. A part of this letter, which had been destroyed at his request, was testified by her to be:

"I should come by the way of Bancroft, and stay at the Rome Hotel [in Omaha,] overnight, and go to the hospital the next morning, stay there with him, and we would go to one of the shows. * * * Q. Stay where with him? A. At the Rome Hotel. Q. Was that in the letter? A. Yes sir."

This plan was carried out on March 18. They went to the hotel, each registering under proper name for a separate room. She never occupied her room, but, at his suggestion that his room had a bath and that she go there, she shared his room and bed, where he again possessed her. Accused paid all expenses of this trip. While in Omaha he arranged for her confinement at the hospital, where the child was born about five weeks later.

Much of the testimony upon which the above outline is based was sharply disputed by accused, but not only is it our duty, in considering the point now in hand, to view the evidence in the light most favorable to the verdict, but a careful study of the entire evidence is convincing that this evidence is true. The above outline shows a seduction of a girl in expectation by her of marriage, followed by repeated enjoyment of her up to five weeks of the birth of her child. After he had moved to Bancroft, he arranged their rendezvous at Sioux City. There they went repeatedly, at his request and expense, and for but one purpose, which was accomplished. It may well be that in taking the trip to Sioux City on December 15 he had as one object, possibly the main object, a discussion of her situation; but his clear expression to her that he would "stay with me until morning" at the hotel, followed by the registration as man and wife by him, occupancy of the same room, and intimacy there, certainly are sufficient basis for a conclusion by the jury that he had the old motive also in mind. This was enough. The situation concerning the Omaha trip, as above outlined, is very similar.

[3] The third challenge to the conviction relates to rulings upon evidence. This point covers the admission of evidence of acts and

expressions by accused at the hospital a few days after the birth of the child, and a letter written by accused to the girl a little over three weeks after the birth. The acts and expressions at the hospital may be summarized, in their effect, as admissions of paternity of the child. It has been recently held by this court (Ammerman v. U. S., 262 Fed. 124, —— C. C. A. ——), that evidence of prior illicit intercourse between the parties may be shown as bearing on the intent. The effect of these admissions of paternity was necessarily to admit illicit relations prior to the journeys covered by the indictment, and therefore was properly admitted. The letter was one acknowledging paternity of the child, and asking her forgiveness for having stated to a priest that accused had not seen her for 15 months. It also suggested marriage and adoption of the baby. The letter was admissible, for the same reason as the acts and statements at the hospital, just discussed.

[4] Other challenged rulings on evidence are the exclusion of a letter to accused from the attorney for the girl in a civil suit by her against accused, arising out of this seduction, and a conversation between accused and the attorney. The vital portion of this evidence was that, unless accused paid $500 in the civil suit, he would have "a white slave prosecution brought against him." The declared purpose of these offers was to affect the credibility of the girl. There was no evidence showing any knowledge on her part of these alleged acts of her counsel, and without such knowledge and approval his acts would have no bearing upon her credibility in this case. Another objection to exclusion of evidence is that accused was prevented from showing why he was absent at the trial of the civil suit. The court properly held this immaterial in this case, in the state of the record at the time of offer.

[5] The fourth ground of attack upon the conviction is based upon refusal to give each of three certain instructions. The first of these was in effect that the verdict must be unanimous. The essence of the second was that the intent to have illicit intercourse must have existed at or before the beginning of the transportation, persuasion, or aid in procuring the transportation. The third required acquittal if the transportation was "for some other purpose and with other purposes and intentions than having sexual intercourse." The first two are, in principle, correct statements of the law; and so is the third, if its meaning be that the sole purpose or purposes was other than sexual intercourse. It is, however, enough if one of the purposes was that forbidden. No prejudice is shown by failure to give the first instruction, since the verdict was unanimous. The other two were sufficiently covered in the given charge.

[6] The fifth challenge of the verdict is the claimed misconduct of a juror. The misconduct was in a statement during the trial to persons outside the courtroom that, "when that letter was produced in evidence, it was enough to show me that he is guilty," and in a statement immediately after the discharge of the jury, made to the prosecuting witness, that "I congratulate you, Miss Wies, on being able to obtain a favorable verdict." This conduct is set forth in affidavits of accused and of his wife, filed in support of a motion for

new trial. An opposing affidavit by the juror was filed, in which he denies making the first statement, or anything to that effect, and admits shaking hands with the prosecuting witness after discharge. We cannot pass upon the truth of these affidavits in so far as they conflict. It seems admitted, though tacitly, that the juror made the statement to Miss Wies. This, however, was not improper, occurring after the discharge of the jury. There is no attempt to show that the opinion of the juror, as expressed in the verdict or afterwards, was not entirely the result of matters properly before him in the trial.

The judgment should be and is affirmed.