(No. 14861.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARKO BASHIC *et al.* Plaintiffs in Error.

*Opinion filed December 19, 1922—Rehearing denied Feb. 8, 1923.*

1. CRIMINAL LAW—*what is gist of offense of assault with intent to murder.* Where the charge is an assault with intent to murder, a specific intent to take life is the gist of the offense, and the intent must be charged in the indictment and proved either by the declaration of the accused or by the character, manner and circumstances of the assault.

2. SAME—*proof of assault with intent to rob does not preclude conviction of assault with intent to murder.* The fact that defendants charged with an assault with intent to commit murder made the assault with intent to rob does not preclude the specific intent necessary to a conviction of an assault with intent to murder, where the circumstances of the assault and the fact that it was made with deadly weapons show a concurrent intent to take life.

3. SAME—*a threat to kill if a demand is not complied with is an assault with an intent to murder.* A threat to kill if a demand is not complied with is an assault with an intent to murder, unless the demand is of such a character that non-compliance therewith will justify the killing of the person upon whom it is made.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

NASH & AHERN, JAMES J. MCDERMOTT, and PAYTON J. TUOHY, (THOMAS E. SWANSON, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and FLOYD E. BRITTON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

An indictment containing three counts was returned into the criminal court of Cook county charging Marko Bashic and Joseph Babich, the plaintiffs in error, together with Frank Zina, (otherwise called Michael Zyma,) Tony Aklich, (otherwise called Tony Bell,) Nicholas Popovitch, Bovo Talovich, Marko Wladisavlvich (otherwise called Fat Mike) and Joseph Josozujan, (otherwise called Joe Zupan,) in the first count, with an assault with intent to kill and murder George Percec. A *nolle prosequi* was entered as to the second and third counts, and the plaintiffs in error were tried on the first count and found guilty by a jury. Bashic was sentenced to the penitentiary and Babich was sentenced to the Illinois reformatory.

The facts as related by several witnesses for the People were in substance as follows: George Percec owned a saloon at 1911 South Racine avenue, in Chicago, and on October 19, 1921, sold it to George Stanisch and wife for $250. He received payment in the evening, about eight o'clock, and turned over the keys to the purchasers and spent the evening in the saloon until eleven o'clock. At about nine o'clock, or shortly after, Frank Zina and Marko Bashic came into the saloon, and Joseph Babich either came in with them or was already there. Percec bought a drink and invited Babich to have a drink with him, but Babich refused. Ba-

shic, Zina and Babich went across the street to an automobile and stood on the sidewalk, talking. At about ten o'clock Bashic and Zina came in again for a drink, and Babich also came in, saying it was raining outside. In the hour between ten and eleven o'clock Babich came in four times, and just before eleven o'clock he asked Stanisch if he was going to close up. Immediately thereafter Zina and Aklich came in the saloon with guns in their hands, and Aklich walked up to Stanisch and said, "Hands up and keep quiet!" Zina walked over to Percec, who was sitting at a table playing cards with Pete Marish, and said, "Hands up and give us your money!" Aklich, after making the demand on Stanisch, followed Zina to Percec, who refused to give up his money and put his hand in his pocket where the money was. Aklich and Zina then beat Percec over the head with revolvers and one or the other shot him in the chest. Some witnesses said it was one and some the other, but they were both beating him over the head with revolvers. Percec called for help, and Stanisch came from behind the bar with a butcher knife, and Zina shot him twice in the neck and twice in the stomach. Stanisch struck Zina once or twice with the butcher knife. Zina started to leave Percec, but Percec held him by the leg, and Mrs. Stanisch told Marish to call the police. As Marish started Zina followed him, and Marish took the gun away from Zina, and Mrs. Stanisch struck Zina over the head with a milk bottle, with bad effects for Zina, who was held by Marish and Mrs. Stanisch until the police came, when the policeman said that Zina was staggering around.

The defendant Babich did not testify, but his brother-in-law, mother-in-law and another witness testified that on the night of October 19 Babich and his wife were at the home of the brother-in-law, about half a block from the saloon, playing cards from about 8:30 in the evening to 12:15. Zina gave this account of the affair: That on Sunday, October 16, he bought thirty-five gallons of wine from

Percec at $4 per gallon and paid down $50; that he was to get the wine on October 19 and went to the saloon with Bashic about six o'clock in the evening for the wine; that Percec was not there, and he bought a drink and talked with Marish and Mrs. Stanisch and her husband; that he and Bashic came back to the saloon about a quarter to seven and again asked for Percec; that they came again about 10:30 or 11:00 with Aklich, and Zina asked for the wine, and Percec said he had sold it to Stanisch; that a fight then started between them; that Aklich did not do a thing and left a little after the fight started; that Stanisch cut Zina with a knife, and he ran around the room and Stanisch after him with the knife; that Marish gave him a gun and he fired some shots but did not mean to hurt anybody, and that he fired the shots in the dark just to scare Stanisch with the knife. Aklich testified that he went to the saloon with Zina and Bashic and heard Zina ask Percec to give him the money he owed him for the wine; that Percec and Zina then started to fight and he left the place and did not have any gun. Bashic testified that he kept a soft drink parlor; that he went in an antomobile to the saloon about six o'clock with Zina; that Zina and he had a drink and went back to the saloon later in the automobile, with a can in the rear for the wine; that he was fixing his machine in front of the saloon and heard shots and jumped in and ran away.

The principal argument for the plaintiffs in error is, that the evidence for the People proved that if any crime was committed it was the crime of assault with intent to rob and not with intent to kill and murder, and that there being a specific intent to rob, the intent to kill required by the statute and law was lacking. Where the crime charged is an assault with intent to murder, a specific intent to take life is the gist of the offense, and the intent must be charged in the indictment and proved as charged either by the declaration of the accused or be inferred from the character, manner and circumstances of the assault. *Crosby* v. *Peo-*

*ple,* 137 Ill. 325; *Friederich* v. *People,* 147 id. 310; 13 R. C. L. 799.

To the argument that proof of an assault with intent to rob will not justify a conviction of an assault to murder, counsel for the People make no reply but furnish the court with authorities on the well known and long established proposition that if several persons agree to commit and enter upon the commission of a crime involving danger to human life all are criminally accountable for death caused by the common enterprise. That is not disputed and the law concerning accessories is not questioned. The question raised by counsel for plaintiffs in error is whether a primary intent to commit another crime in the execution of which an assault is made precludes the specific intent involved in an assault with intent to murder. That question has been considered by the court, and the conclusion has been that although there is an intent to accomplish one crime there may be an alternative or concurrent intent to take life. In *Hamilton* v. *People,* 113 Ill. 34, three persons entered a farm for the purpose of stealing watermelons in the night time. There had been someone in the watermelon patch for two nights previously, and the farmer and his son were on the watch for anyone who might enter. The boy halted the melon stealers and one of them ran away. Another said that there was only a man and a boy, and said to the others, "Let's get what we came after." He knocked the boy down, took a shotgun away from him and shot at the farmer with a pistol. The farmer's wife came up with a hoe, and the man knocked her down and chucked her head on the ground and the farmer was assaulted with the hoe. The court said the three defendants invaded the premises with a criminal purpose and one of them was armed with a pistol; that what was done by one, in contemplation of law was done by all; that an assault was made upon the farmer with a loaded pistol and hoe, and that the hoe, in both popular and legal significance, was *per se* a deadly weapon. The

fact that the parties were engaged in a dangerous criminal enterprise did not hinder their conviction and the judgment was affirmed.

In *People* v. *Connors,* 253 Ill. 266, members of a labor union pointed a revolver at a workman belonging to another labor union and demanded that he should take off his overalls or they would bore a hole through him. They were indicted and convicted for an assault with intent to murder. The court commended an instruction telling the jury that although they must find that there was a specific intent to kill the prosecuting witness, still, if the intention was only in the alternative and the intention was to compel the workman to take off his overalls and quit work or to kill him if he did not, and the specific intent was formed in the minds of the defendants and the shooting with intent to kill was only prevented by compliance with the demand, the requirement of the law as to specific intent was met. It was declared that an assault is complete where it is shown that the assailant, with present ability to destroy life or do great bodily harm, draws a dangerous weapon on another and threatens to kill him unless the party assailed complies immediately with some unlawful condition or demand. In that case, as in this, the demand proved was unlawful, and in this case it was criminal. This court there commented on the decision in *Hairstron* v. *State,* 54 Miss. 689, where a threat was made to one attempting to stop a mule team on the public highway and the demand was complied with. The judgment of conviction of Hairstron was reversed. The Mississippi court distinguished between a lawful and unlawful demand, because the threat was conditioned upon a demand which the party had a right to make. This court, however, did not make such a distinction, and could not, because the question was in no way involved. And in *State* v. *Morgan,* 25 N. C. 186, it was demonstrated that the fact that the demand made by an assailant is one which he has a right to make does not prevent the assault from being an

assault with intent to murder unless the demand was such
as would justify the killing of the person upon whom it
was made if it was not complied with.    A threat to kill,
unless any other sort of demand is complied with, is an as-
sault with an intent to murder.    *State* v. *Dooley,* 121 Mo.
591; *Hardy* v. *State,* 36 Tex. Crim. 400.

It is urged that the court erred in giving the first in-
struction requested on behalf of the People, which gave to
the jury the statute respecting an assault with an intent to
commit murder, and the objection is that there was no evi-
dence on which to base it.    It has already been shown that
there was evidence which, if believed by the jury, required
a verdict of guilty.

It is also contended that the evidence was not sufficient
to establish guilt beyond a reasonable doubt; that the proof
of an alibi by Babich was sufficient to create such doubt as
to him, and as to the others the evidence proved that there
was a quarrel about wine which had been sold by Percec
to Zina, which resulted in a fight amounting to no more
than an ordinary saloon brawl, in which Percec was shot.
It is said that taking this testimony in connection with the
account of the witnesses for the People as to the manner
in which the attempted robbery took place, there was at
least a reasonable doubt of guilt.    It is true that persons
with an ordinary degree of intelligence do not usually at-
tempt to commit a robbery in a public place in the presence
of witnesses, where the crime is practically certain to be
known and conviction is reasonably sure, but that does not
afford a sufficient reason for setting aside the judgment.
Percec denied that he sold any wine to Zina, and the other
witnesses for the People testified that there was nothing
said about wine and that the account given by the defend-
ants was without foundation in fact.    One set of wit-
nesses or the other must be believed, and the jury had an
opportunity for determining which witnesses were entitled

to credit of which we are deprived, and their conclusion was approved by a judge who had the same opportunity and was skilled in weighing testimony and determining questions of fact.

There is no sufficient ground for disturbing the judgment, and it will be affirmed.      *Judgment affirmed.*