THOMAS M. EBY v. STATE OF INDIANA.

[No. 572A229. Filed December 18, 1972. Rehearing denied January 22, 1973. Transfer denied April 18, 1973.]

510

*David F. McNamar, Steers, Klee, Sullivan & Lemay,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

WHITE, J.—Defendant appeals from a bench trial conviction of first degree burglary on an affidavit charging that he broke into the dwelling of prosecutrix "with intent to do violence and physical abuse upon" her. The only substantial issue before us is whether the evidence is sufficient to prove beyond a reasonable doubt the specific intent charged. We hold that it is and affirm.

Indiana's statutory first degree burglary differs in its essential elements from the common law crime of burglary not only in omitting the nighttime requirement[1] but also in

---

1. "Burglary at common law was the breaking and entering *in the nighttime* of the dwelling house of another with intent to commit a

adding a specific intent, i.e., "with the intent . . . therein . . . to do any act of violence or injury to any human being."[2]

Solely for the purpose of discussing the law applicable to proof of the specific intent here charged we assume that the only evidence thereof in the case at bar is the breaking and entering and the act of violence defendant committed on prosecutrix after he entered her apartment. (He grabbed her as she was walking from one room to another, pushed a pillow against her face, backed her against the wall, released her when she bit his hand and she then ran from the apartment.) Also assumed, but merely *arguendo,* is the proposition that his commission of the battery *after* entry, without more, is *not* sufficient to prove beyond a reasonable doubt that his *purpose* for breaking in (i.e., the *reason* he broke in) was "to do violence and physical abuse upon" prosecutrix. On the basis of these assumptions we address the abstract legal

---

felony therein." (Emphasis added.) *Carrier* v. *State* (1949), 227 Ind. 726, 730, 89 N.E.2d 74, 75.

2. The statute reads:

"Whoever breaks and enters into any dwelling house or other place of human habitation with the intent to commit any felony therein, or to do any act of violence or injury to any human being, shall be guilty of burglary in the first degree . . ." Ind. Ann. Stat. § 10-701 (Burns 1956 Repl.); IC 1971, 35-13-4-4.

"It is the intent of the person at the time they [sic] break and enter that is at stake [in a burglary prosecution]." *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133, 139, 26 Ind. Dec. 275, 282.

The specific intent "to do any act of violence or injury" to any human being was not in the 1905 (Ch. 169, § 373) or 1929 (Ch. 54, § 2) definition of burglary and apparently made its first appearance in 1935 by Ind. Acts 1935, Ch. 212, § 1, which read the same as the present statute (Ind. Acts 1941, Ch. 148, § 4, quoted above) except as to penalty. Since 1905 we have had, and still have, the following statute defining a similar crime:

"Whoever, either in the daytime or nighttime, unlawfully breaks open and enters into any dwelling house, shop, store, boat or other watercraft, in which any person resides or dwells, and commits or attempts to commit any personal abuse, force or violence, shall, on conviction, be imprisoned in the county jail not less than ten (10) days nor more than six (6) months, or in the state prison not less than one (1) year nor more than fourteen (14) years." Ind. Acts 1905, c. 169, s. 376, Ind. Ann. Stat. § 10-706 (Burns 1956 Repl.), IC 1971, 35-1-61-3.

Cursory research indicates that Indiana's burglary statute is unique in its provision that being possessed of "intent . . . to do any act of violence or injury" makes one who breaks in a burglar. And even in Indiana we can find no reported case in which that was the specific intent charged.

question of whether the commission of a battery after break-in, without more, is sufficient circumstantial evidence to warrant the inference that the intruder possessed a specific intent to do violence at the time he entered. In short, we question whether "intent" is "purpose."

As Professor Hall has noted, "The meaning of any term employed in legal discourse is either popular or technical; the latter frequently represents the imposition of a professional superstructure upon an initially common word."[3] Likewise the meaning of a legal term is most often explained by equating it to a synonym which has only a popular meaning. In Black's LAW DICTIONARY 4th Ed. (1957), p. 947, we find:

> " 'Intent' and 'motive' are not in law one and the same thing. State v. Logan, 344 Mo. 351, 126 S.W.2d 256, 260, 122 A.L.R. 417. 'Intent' in legal sense is purpose to use particular means to effect certain result; whereas, 'motive' is reason which leads minds to desire that result. United Fidelity Life Ins. Co. v. Adair, Tex. Civ. App., 29 S.W.2d 940, 943."

In 1 Burdick, LAW OF CRIME (1946), § 120, p. 139 we find this discussion under the catch line "Specific Intent" (notes omitted) :

> "In addition to the mental element known as 'the intent' which must exist in all crimes, some crimes require a further mental element known as the specific intent. This is intent in the popular sense, a definite and actual purpose to accomplish some particular thing. For example, burglary at common law is breaking and entering in the night-time the dwelling house of another with intent to commit some felony therein. This intent to commit a felony is a specific intent. To constitute the crime, each one of its elements must be willingly or voluntarily committed, and that is what constitutes 'the intent', which in distinction from a specific intent is often called 'the general intent'. But in addition to this general intent the state of mind which must accompany burglary requires another element and that is a specific intent to commit some felony. The

---

3.   Hall, PRINCIPLES OF CRIMINAL LAW, p. 450 (1947).

intended felony in burglary is usually larceny, but it may be some other felony such as murder, rape, or arson, but the breaking and entering the dwelling house of another in the nighttime would not be burglary unless the specific intent, or purpose or design, to commit a felony is also present. Likewise, in the crime of larceny there is a specific intent, an intent to deprive permanently the owner of his property, technically known in the law as the *'animus furandi'*, or intent to steal. Also, in a charge of assault, with intent to kill, there must be present all the elements, including the mental state, required in an assault, and also a specific intent to kill, which would be a particular or specific direction of the mind against the life of the person assailed. In most crimes there is no specific intent, the general intent being all that is required, but, as previously pointed out, every *attempt* to commit a crime necessarily includes a specific intent to commit that particular crime. The crime of murder contains no element of specific intent and one may be guilty of murder without an intention of taking life, but in an attempt to murder the specific intent to take life must be present.

"The general criminal intent in crimes is presumed from the criminal act, and if the absence of any general intent is relied upon as a defense, such absence must be shown by the accused. A specific intent is not presumed. Its existence is a matter of fact for the jury, and must be proved by the state just as any other essential element. This may be shown, however, by the nature of the act, the circumstances under which it was committed, the means employed, and the motives of the accused."

Upon the assumptions we have made, if we were to adopt Prof. Burdick's definition of specific intent ("a definite and actual purpose to accomplish some particular thing"), we would be forced to say that the evidence was not sufficient to prove the specific intent charged. But we are satisfied that the meaning of "intent" (as a legal term in what we call "specific intent") does not always coincide with the popular concept of "purpose." Although one cannot do an act for a purpose (i.e., to achieve a result) without having a specific intent to accomplish that purpose, the existence of such intent does not necessarily preclude the coexistence of other intents

which are also specific intents even though they are not the purpose of, or the reason for, the act.

*Yoder* v. *United States* (CA10, 1935), 80 F. 2d 665, was an appeal from a conviction under the so-called White Slave Act. The section of the statute under which defendant was convicted "condemns the interstate transportation of a woman 'for the *purpose* of prostitution or debauchery, or any other immoral purpose.' 18 U.S.C.A. § 398." (Id. at 668.) The defense was that although immoral practices were engaged in during the interstate trip and at its destination, such was not the purpose of the trip. Instead, the purpose asserted was the woman's employment of the defendant to take her to Chicago to transact legitimate business. The trial court, however, instructed the jury "that even if she employed him to make the trip to inspect a garage, still he would be guilty if when the trip started he intended to have carnal knowledge with her." (Id. at 669.)

In holding the giving of that instruction (charge) to be reversible error the court of appeals said:

"The court's charge substituted for the 'purpose' condemned by the statute the 'intent' of defendant. An examination of the dictionaries helps but little in ascertaining the meaning of these words, for each has its shades which merge one into the other. In ordinary use, 'purpose' means the motive for an act, the intention which prompted it, and without which it would not have occurred. 'Purpose' is an intent that motivates. Action is had because of one or more purposes; accompanying the purpose are intentions which are purely incidental and which exert no influence on the action. Counsel go from Oklahoma City to Denver to argue a case; when they leave, they have a fixed intention to ride on the train, to eat, and to sleep. Yet no one would say the purpose of the trip was to eat. The substitution of the 'intent' used in the charge for the 'purpose' of the statute ignored the element of motivation in the word 'purpose', and by so doing, stripped the defendant of his defense.

"If the charge had followed the statute, the jury might well have believed that the purpose of the trip was legitimate employment, and that any idea of sexual relations was

as subsidiary and as unrelated to the reasons for the trip as eating and sleeping en route. Not only did six witnesses, five disinterested, testify directly as to the purpose of the trip, but the jury's common sense might have suggested that, on Mrs. Young's own testimony, it was quite unnecessary to go to Chicago or anywhere else for sexual reasons. In the ordinary use of language, it cannot fairly be said that Yoder transported Mrs. Young for an immoral purpose, if the only reason which prompted him to make the trip was to earn mechanic's wages, simply because he intended to continue his relations with her while on the trip.

"The government charged what the statute condemns, an interstate transportation for an immoral purpose. The government offered proof of such purpose. The defendant offered evidence that the trip was made for an entirely different purpose—a business reason. The jury should have been left to decide the issue. Instead the court charged in substance that whatever may have been the reason that brought about the trip, there must be a conviction if Yoder intended to have sexual commerce with her while away. No matter how vagrant and fleeting that intent, no matter that it did not influence in the slightest degree the decision to make the trip, still, the court charged, there must be a conviction if Yoder harbored the intent to continue his relations with her. This is substantial error." (Id. at 670.)

After citing many cases in which the same result was reached without words drawing so clearly the distinction between "intent" and "purpose," the court commented:

"While 'intent and purpose' are used synonymously in the second clause of this statute, and many courts have so used them in these cases, yet the authorities cited all hold, as we do, that the prospect of sexual relations must have some relation to, and be one of the reasons or purposes of the trip. There may, of course, be two or more purposes for one trip, Carey v. United States (C.C.A. 8) 265 F. 515, but if the sole purpose of the trip is legitimate, a purely incidental intent to have intercourse is not a federal offense. If the jury believed the witnesses for the defendant here, there was no crime. And their testimony is strongly buttressed by the admitted fact that there was no necessity to go to Chicago, or anywhere else, for an immoral purpose." (Id. at 672.)

In our neighboring state of Illinois we find several assault-with-intent-to-kill cases in which the *purpose* of the assault was not to kill the victim yet it was held that the specific intent to kill had been proved.[4] The first of those cases is *People v. Connors* (1912), 253 Ill. 266, 97 N.E. 643, in which several men (the defendants-appellant) came to a construction site for the purpose of coercing men working there who were members of the "old union" to go with them to a hall to join the "new union." The defendants pointed guns at the heads of the victims and threatened to kill them if they did not go. The charge and the conviction was of the crime of assault with intent to kill. On appeal the giving of this instruction to the jury was approved:

> "The court instructs you as to the intent to kill alleged in the indictment that though you must find that there was a specific intent to kill the prosecuting witness, Morgan H. Bell, still, if you believe from the evidence beyond a reasonable doubt that the intention of the defendants was only in the alternative—that is, if the defendants, or any of them, acting for and with the others, then and there pointed a revolver at the said Bell with the intention of compelling him to take off his overalls and quit work, or to kill him if he did not—and if that specific intent was formed in the minds of the defendants and the shooting of the said Bell with intent to kill was only prevented by the happening of the alternative—that is, the compliance of the said Bell with the demand that he take off his overalls and quit work—then the requirement of the law as to the specific intent is met."

*People v. Bashic* (1922), 306 Ill. 341, 345, 137 N.E. 809, 810, states the principle thus:

> "The question raised by counsel for plaintiffs in error is whether a primary intent to commit another crime in the execution of which an assault is made precludes the specific intent involved in an assault with intent to murder. That

---

4. In addition to the two cases hereafter cited and quoted in the text, cases which recognize the principle of alternate or concurrent specific intents are *People* v. *Henry* (1934), 356 Ill. 141, 190 N.E. 361 and *People* v. *Coolidge* (1963), 26 Ill. 2d 533, 187 N.E.2d 694.

question has been considered by the court and the conclusion has been that, although there is an intent to accomplish one crime, there may be an alternative or concurrent intent to take life."

While the purpose for which an intruder has broken into the habitation of another is not presumptively established *"merely* upon proof of breaking and entering,"[5] his unexplained entry by such means in a home in which he is a stranger is logically sufficient to sustain a reasonable inference that whatever may have been his primary intent or purpose he must have anticipated that confrontation with the home's inhabitants was not unlikely and that his presence would not be welcome. If a confrontation then occurs and he does commit an act of violence upon the person he thus confronts, the commission of the act is sufficient to justify the inference that he entered with the specific intent to do what he did, provided the occasion arose. That he also had, or may have had, a different *purpose* or *reason* for breaking and entering would subtract nothing from the reasonability of inferring the concurrent intent to do violence if confronted. Nor would insufficiency of the evidence to imply precisely what defendant's purpose was subtract anything from the reasonableness of inferring intent on entry to do violence, if violence is committed after entry and if there is no reasonable doubt that the purpose for breaking in was not innocent.

Our comments relative to the reasonableness of inferring a specific intent on entry from the doing of an act after entry are not intended, and must not be understood, to establish a so-called presumption of law. No trier of fact is required or authorized to find a defendant guilty of first degree burglary *merely* because the evidence proves that he broke and entered a place of human habitation and voluntarily committed an act of violence therein *unless* that judge or jury is convinced by all the evidence beyond

5. *Easton* v. *State* (1967), 248 Ind. 338, 349, 228 N.E.2d 6, 13, 11 Ind. Dec. 34, 42.

a reasonable doubt that when the defendant broke in he intended to commit violence if the occasion arose. We do say that it is not necessary for that judge or jury also to be convinced that the commission of violence was the purpose of the breakin. They may be convinced that he had another purpose or they may be in reasonable doubt as to what his purpose was.

Conversely, we would avoid the implication that any particular fact situation creates a presumption of law that the specific intent to commit an act of violence was not in the defendant's mind at the time of entry. In that regard we suggest that attempts to avoid confrontation after entry, attempts to flee on discovery, failure to carry weapons, may be sufficient to create that reasonable doubt or may merely prove a preference for a non-violent intrusion, leaving unshaken the reasonable conviction induced by other substantial evidence of probative value that the intent to do violence *if necessary*, existed at entry. Such a conditional intent is specific.

Our function as a criminal appellate court is never to say what has been proved by the evidence or what hypothetically conceived evidence will prove. We may say only that certain evidence is or is not sufficient in law to the affirmance of a trial judge's or jury's finding that a fact has been proved.

Defendant relies on two cases in which the facts are similar to those at bar, but the specific intent charged was quite different. In both *Coleman* v. *State* (1967), 248 Ind. 137, 224 N.E.2d 47, and *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133, the charge was first degree burglary with intent to commit the felony of rape. In neither case was a rape committed but in both cases the defendant did commit an assault and battery on the female occupant of the premises broken into.

In *Smith*, it was said that "his [defendant's] hitting her is consistent with entering with the intent to steal and being

surprised by the victim waking and turning a light on." It was pointed out that defendant made no effort to sexually molest her and only aproached her after she had turned the light on and hit her after she started screaming. (He did take a radio and his conviction for burglary with intent to steal was affirmed.)

In *Coleman* the court said:

> "We find no substantial evidence that Appellant attacked Miss Conour for any purpose whatever and particularly for the purpose and with the intention of rape. On the other hand, we think it clearly appears that Appellant, when discovered either coming into or after entering the premises of Miss Conour, was exerting reasonable efforts to leave the place through a door, but he was restrained from so doing by Miss Conour." *Coleman, supra,* 248 Ind. at 139, 224 N.E.2d at 49.

In neither *Coleman* nor *Smith* did the court address itself to the hypothetical question of whether the evidence would have sustained a conviction had the specific intent charged been intent to commit an act of violence. We find nothing in those opinions, however, which is inconsistent with our opinion that the evidence in each of those cases was sufficient to have sustained such a conviction. We entertain that opinion notwithstanding the fact that the language in *Coleman* that defendant "was exerting reasonable efforts to leave the place" and was not attacking her for any purpose carries some slight suggestion (unintended, we believe) that the defendant had a right to fight his way out when he got caught. Even were that the law, it is not applicable here. The victim here was not barring defendant's escape for he was between her and the patio doors through which he entered and left.

Furthermore there is evidence[6] which supports the inference that defendant entered the apartment while prosecutrix was

---

6. The victim's testimony: "I didn't check the sliding doors, and figured that I'd go ahead and lock them after I showered, and that's when I heard the first noise. And so I was afraid then and I closed the bathroom door and locked it, and then after I showered and stuff, I came out and that's when I was attacked."

showering and that, with pillow in hand and without evidence of preparation to steal, he waited for her to emerge from the bathroom. Which is to say, of course, that the encounter was not a surprise to him, he made no attempt to avoid it and but for his ineptitude in allowing his hand to be bitten would have continued to smother prosecutrix with the pillow. From all of which it is reasonable to infer that defendant entered for the purpose of doing what he did; that he was seeking such an encounter when he opened the patio door and entered the apartment.

There was sufficient evidence to sustain the finding that defendant broke and entered "with intent to do violence and physical abuse upon" prosecutrix.

We must also mention defendant's contention that "any act of violence," as that term is used in the first degree burglary statute is more than a mere touching or a simple assault and battery. Perhaps his most superficially cogent authority is a quotation from *Hughes* v. *State* (1937), 212 Ind. 577, 586, 10 N.E.2d 629, 633, in which a jury instruction was held erroneous because it said that defendants were not justified in assaulting in self defense unless "violently assaulted." Said the court:

> "The word 'assault' implies force, and in one sense the term 'violently' also implies force, but, in connection with the word 'assault', which also implies force, it generally implies great force. One may defend himself against any assault. *'Violently' may imply great or extreme force.* [Emphasis Added]. A violent presumption is something more than a mere presumption; a violent storm, more than an ordinary storm; *a violent attack, more than an ordinary attack. State* v. *Miller*, (1926), 141 Wash. 104, 250 Pac. 645." (Emphasis Added.)

That quotation (as well as his quotation from *Craig* v. *State* [1901], 157 Ind. 574, 576, 62 N.E. 5) involves the use of an adjective or adverb to magnify the force of an act beyond a simple assault, but it is also consistent with the definition of the noun "violence" as force, particularly the unjust, un-

warranted and unlawful use of force. Black's LAW DICTIONARY, 4th Ed., p. 1742.

> " 'The terms "violence" and "force" are synonymous when used in relation to assault, and include any application of force even though it entails no pain or bodily harm and leaves no mark.' People v. Flummerfelt, 153 Cal. App. 2d 104, 313 P. 2d 912, 913 (Cal. D. Ct. App. 1957).
> ' "Violent" is a relative term. No particular degree of force is required to constitute violence. Violence is broadly defined in Webster's New International Dictionary, 2d Ed., as "the exertion of any physical force considered with reference to its effect on another than the agent." ' Boecker v. Aetna Casualty & Surety Co., 281 S.W.2d 561, 564 (Mo. Ct. App. 1955)." *Falconiero* v. *Maryland Casualty Co.* (1960), 59 N. J. Super. 105, 157 A. 2d 160, 162.[7]

We hold that "violence," as the term is used in the first degree burglary statute is synonymous with "force" and includes any application of force even though it entails no pain or bodily harm and leaves no mark. Thus if defendant intended to use no greater force than that which he had already applied when his victim escaped from him, he nevertheless intended an "act of violence". But we also hold that what happened was sufficient to sustain an inference that he intended to exert, and would have exerted, great force had he not been thwarted by the victim's biting of his hand.

We agree with all that is said in the concurring opinion and especially the quotation from 1 Burdick, LAW OF CRIME (1946), § 120, p. 139, which is also more fully quoted herein, *ante,* p. 513. We harbor no fear, however, that we will be accused of either presuming specific intent ourselves or of authorizing triers of fact to do so.

The judgment is affirmed.

Sullivan, J., concurs; Buchanan, P.J., concurs with opinion.

---

7. For the same definition of "violence" see also *People* v. *James* (1935), 9 Cal. App. 2d 162, 48 P. 2d 1011, 1012; *State* v. *Miles* (1965), 87 N.J. Super. 571, 210 A. 2d 236, 243; *State* v. *Miles* (1967), 94 N.J. Super. 169, 227 A. 2d 346, 348.

## CONCURRING OPINION

BUCHANAN, P.J.—SOLE GROUND FOR CONCURRENCE —I concur in the affirmance of the conviction solely on the prosaic, technical ground that there is evidence of probative value from which a reasonable inference may be drawn that the defendant had the requisite specific intent[1] to do "violence or injury" to the prosecutrix at the time he broke and entered into her apartment.

STATEMENT OF ESSENTIAL FACTS—There is testimony in the record by Zerelda John, Resident Manager of the apartments in which the prosecutrix resided, that on the night in question she was sitting on a porch of one of the apartments near that of the prosecutrix visiting with a neighbor. While so occupied she observed the defendant headed in the direction of the prosecutrix's apartment. She said this occurred at "approximately 11:00 o'clock." Shortly after the defendant disappeared from sight she heard screams. After the police arrived she identified a photograph exhibited to her by the police as being "the man I saw."

The prosecutrix, a Mrs. Wyronski, testified that she returned home "about 11:00 o'clock." Her husband was out of the city overnight and as she entered her apartment she experienced an uneasy feeling which prompted her to search the apartment and check all the closets—five in number, one in each room. Finding no one there she then turned off the lights in the kitchen, dining room, and living room and went into the bathroom and the back bedroom area where she prepared to take a bath.

After entering the bathroom and preparing to take a shower she heard a noise which unnerved her. So she closed the bathroom door, locked it, and took her shower preparatory to retiring for the night. She then heard another sound which frightened her, causing her to start downstairs to another

---

1. Per Ind. Ann. Stat. § 10-701 (Burns 1956 Repl.); IC 1971, 35-13-4-4.

apartment for aid. Proceeding down the hall she was accosted by the defendant with a pillow in hand. who grabbed her and pressed the pillow, which had been obtained from the living room, against her face. During this time she was screaming and when the pillow was pressed over her face she bit the defendant's left hand. At this moment there was a banging on her apartment door which indicated the presence of other persons and the defendant fled through the patio door.

There was also testimony by the prosecutrix that the door of her apartment was unlocked during the time she was at a neighbor's apartment earlier in the evening. She expressed no opinion as to how the defendant entered her apartment.

BASIS FOR CONCURRENCE—Indiana courts of appeal are obliged to sustain a conviction if there is evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. Authority in support of this proposition is too numerous to cite.

The reasonable inference we search for here relates only to whether the defendant broke and entered the apartment with the requisite specific intent, i.e., to do an act of violence or injury to the prosecutrix. Indicative of such a reasonable inference is the short time lag between Zerelda John's observance of the defendant and the screams heard shortly thereafter, and further, the prosecutrix visibly searched each room of the apartment including the closets and switched off lights in the kitchen, dining room, and living room, all of which would indicate her presence in the apartment. Her activity and obvious presence would be known to the defendant prior to his entry if they arrived at about the same time because she had previously searched the apartment and he was not there.

Thus there is a clear reasonable inference from circumstantial evidence of probative value justifying the trial court's conclusion that the defendant broke and entered into

the apartment with the specific intent of doing an act of violence or injury to the prosecutrix. "That a conviction may be sustained wholly on circumstantial evidence is not in doubt provided the evidence is of such probative value that a reasonable inference of guilt may be drawn. Coach v. State (1968), 250 Ind. 226, 235 N.E.2d 493; Medsker v. State (1968), 249 Ind. 369, 232 N.E.2d 869; Melvin v. State (1968), 249 Ind. 351, 232 N.E.2d 606; Stallings v. State (1967), 249 Ind. 110, 231 N.E.2d 29." *Vaughn* v. *State* (1971), 255 Ind. 678, 266 N.E.2d 219.

It is my preference that our opinion be confined to an examination of the evidence supporting a reasonable inference of the necessary specific intent, lest we be accused of presuming specific intent.[2]

NOTE.—Reported at 290 N.E.2d 89.

---

2. "A specific intent is not presumed. Its existence is a matter of fact for the jury, and must be proved by the State just as any other essential element." 1 *Burdick, Law of Crime* (1946) ¶ 120, p. 139.