## DOUGLAS R. COLBURN v. STATE OF INDIANA

[No. 2-777A279. Filed December 14, 1978.]

*Harriette Bailey Conn, [Mrs.],* Public Defender of Indiana, *David P. Freund,* Deputy Public Defender, *Bobby Jay Small,* Deputy Public Defender, *Robert W. Hammerle,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

SHIELDS, J. — Following a trial by jury, Colburn was convicted of Entering to Commit a Felony[1] and Aggravated Assault and Battery,[2] for which

---

1. IC 35-13-4-5 [Burns Code Ed. 1975], which was subsequently repealed effective October 1, 1977.

2. IC 35-13-3-1 [Burns Code Ed. 1975], which was subsequently repealed effective October 1, 1977.

The information charged Colburn with Assault and Battery with Intent to Kill, by discharg-

he was sentenced to two concurrent terms of one-to-five years. Colburn appeals, challenging the sufficiency of the evidence to sustain the convictions and the correctness of the trial court entering judgment and sentence on both convictions. We affirm.

In addressing the sufficiency of the evidence, we note the evidence favorable to the verdict discloses the following:    John and Betty Peterson [Mr. and Mrs. Peterson], the parents of Colburn's wife, had legal custody of the Colburns' child, Shannon Rae Colburn [Shannon], — a situation causing conflict between the families. Approximately two weeks prior to the charged incident, while visiting the Petersons in Marion, Indiana, the Colburns took Shannon, without the Petersons consent, to their home in Louisville, Kentucky. Mr. Peterson drove to Louisville on November 15, 1975 and brought Shannon back to Marion.

On November 17, 1975, after discussing a hunting trip with his landlord, Colburn borrowed the latter's shotgun, which he placed in the trunk of his car. The Colburns later telephoned Mrs. Peterson and Colburn asked if the Petersons would be bringing Shannon back to Louisville. When Mrs. Peterson answered no, Colburn "got angry . . . and . . . said, 'Old Woman, if she's not back here by Saturday, you don't know what trouble is.' "

Later that evening, the Petersons heard glass shatter in what Mr. Peterson thought to be the front door. Proceeding to the door, Mr. Peterson pulled back the blind and "saw Ray [Colburn] with a shotgun aimed at the door." Colburn warned Mr. Peterson that he wanted his daughter or "I'll kill you." Mr. Peterson told his wife to call the police — that Colburn was outside with a shotgun. Mr. Peterson then ran to his bedroom and grabbed his gun. Mrs. Peterson, with Shannon in her arms, met her husband outside the bedroom and reported she was unable to get a dial tone.

---

ing a shotgun which struck and wounded John Peterson. The Indiana Supreme Court has recognized that an allegation of a gunshot wound in an information charging Assault and Battery with Intent to Kill sufficiently charged "great bodily harm" required to make Aggravated Assault and Battery a lesser included offense. *Thomas v. State* (1970), 254 Ind. 600, 261 N.E.2d 588 [with two judges dissenting]; *cf.: Gutowski v. State* (1976), 170 Ind.App. 615, 354 N.E.2d 293 [a stab wound like a bullet wound sufficiently charges great bodily harm].

When Mr. Peterson returned to the front part of the house, Colburn was inside the door, pointing his shotgun at Mr. Peterson. Colburn again asked for his daughter. Mr. Peterson, aiming his gun at Colburn, ordered him out of the house. Mr. Peterson next remembered a shot and that his right hand, the one with which he was holding his gun, "went up" and the hand "was all blood." As his hand raised, he fired his gun, lodging a bullet in the ceiling. Colburn laughed, remarking, "I got you." While Mr. Peterson was attempting to reload his gun, Mrs. Peterson, still carrying Shannon, ran out the back door, screaming for help. Meanwhile, Colburn left through the front door and climbed the fence into the back yard. Catching sight of Colburn, Mrs. Peterson returned to the house followed by Colburn. Colburn demanded that Mrs. Peterson "put my baby down." As Mr. Peterson entered the room, Mrs. Peterson, carrying Shannon, fled from the house.

Colburn and Mr. Peterson then moved into the front yard, where the evidence indicates that Colburn still held his gun. A witness noticed that while in the yard the two men were moving in the same direction — Colburn "driving" and Mr. Peterson "backing up." When Mr. Peterson returned to the house for a tourniquet, Colburn fled through an alley. Police arrived shortly thereafter and in the course of their investigation discovered the telephone lines leading to the Petersons' home were no longer attached to the junction box. Colburn later testified that he knew the location of the junction box and "may have" pulled the wires loose "accidentally or on purpose."

Armed with a description of Colburn and his automobile, the police arrested Colburn several blocks from the Petersons' home as he was returning to his car. The officers retrieved the shotgun along an adjacent railroad track.

I.

Challenging the sufficiency of the evidence to sustain his conviction of Aggravated Assault and Battery, Colburn argues that the evidence fails to support the jury's conclusion that Mr. Peterson suffered great bodily harm. Specifically, Colburn charges that Mr. Peterson's testimony was insufficient to establish the requisite degree of harm.

Although the State introduced no medical records or testimony to

substantiate Mr. Peterson's injuries, medical evidence is not required when the evidence is otherwise sufficient to support an inference of great bodily harm. *Valentine v. State* (1971), 257 Ind. 197, 273 N.E.2d 543; *Houston v. State* (1976), 168 Ind.App. 189, 342 N.E.2d 684.

The Indiana Supreme Court has defined great bodily harm as more than "slight, trivial, minor or moderate harm." *Froedge v. State* (1968), 249 Ind. 438, at 445, 233 N.E.2d 631, at 636; *Accord, e.g., Barbee v. State* (1977), 267 Ind. 299, 369 N.E.2d 1072; *Valentine v. State, supra; Allison v. State* (1973), 157 Ind.App. 277, 299 N.E.2d 618.

In the present case, Mr. Peterson testified that his right side was sprayed with shotgun pellets, the pellets striking his right hand, arm, shoulder, and the right side of his face. Other witnesses testified that after the incident there was "blood all through the house." Mr. Peterson was taken to the hospital where, according to his testimony, he remained eight days. Mr. Peterson further stated at trial that there were still pellets in his arm and hand, that he could not use his right hand, and that he was receiving physical theraphy three times a week. This evidence is certainly sufficient to support an inference of great bodily harm.

## II.

In challenging the sufficiency of the evidence to support his conviction of Entering to Commit a Felony, Colburn argues that he had not formed the required felonious intent at the time of entry.[3] While

---

3. The information charged Colburn with first-degree burglary, accomplished with the intent "to commit a felony" or "an act of violence or injury." In reviewing the sufficiency of the evidence to support Colburn's conviction of the lesser offense of entering to commit a felony, we note, although Colburn does not raise this issue on appeal, that the information, in alleging intent "to commit a felony," failed to identify the specific underlying felonious intent. Similarly, the allegation of intent to commit "an act of violence or injury," failed to identify the specific underlying felonious intent. Unlike the lesser offense of entering to commit a felony, first-degree burglary can be accomplished with less than a felonious intent, *i.e.*, intent to commit any act of violence or injury. Therefore, the allegation of intent to commit an act of violence or injury provides no notice of the particular felonious intent. By failing to designate the underlying felonious intent, the information was not sufficient to include the charge of entering to commit a felony. *Bays v. State* (1959), 240 Ind. 37, 159 N.E.2d 393. Colburn had the right to demand notice of the specific felonious intent with which he was charged and could have properly attack-

acknowledging that this Court will not weigh the evidence or judge the credibility of witnesses, Colburn urges that the evidence only established that he intended to retrieve his daughter, that "had Shannon been given to him or John Peterson not produced a gun, . . . no shooting would have occurred." In support of his argument, Colburn points to evidence of the continuing battle between the families over Shannon's custody, and to his own testimony concerning the confrontation which contradicts Mr. Peterson's testimony.

In *Eby v. State* (1972), 154 Ind.App. 509, 290 N.E.2d 89 (Judge Buchanan concurring with separate opinion), Judge White addressed the meaning of specific intent required in burglary and like offenses. Speaking to appellant's challenge that the evidence failed to establish intent to cause bodily injury at the time of the breaking and entering, Judge White stated, "[a]lthough one cannot do an act for a purpose (i.e., to achieve a result) without having a specific intent to accomplish that purpose, *the existence of such intent does not necessarily preclude the coexistence of other intents which are also specific intents.*" 154 Ind.App. at 514-15; 290 N.E.2d at 93 (emphasis added).

---

ed the information by a motion to dismiss. IC 35-3.1-1-4(a)(9) [Burns Code Ed. 1975]; for present law, *see* IC 35-3.1-1-4(a)(9) [Burns Code Ed. Supp. 1978]. *See also, Kain v. State* (1954), 234 Ind. 160, 123 N.E.2d 177; *Bikel v. State* (1978), Ind.App., 375 N.E.2d 274; *Wilson v. State* (1975), 164 Ind.App. 665, 330 N.E.2d 356.

IC 35-3.1-1-4(b) says that unless the error in the information defeats the jurisdiction of the trial court over the subject matter of the prosecution, certain errors are deemed waived if the information is not attacked by a motion to dismiss prior to arraignment and plea. In *Brown v. State* (1941), 219 Ind. 251, 37 N.E.2d 73, the Indiana Supreme Court distinguished the type of jurisdictional error which cannot be waived, from errors in the sufficiency of the charging affidavit which can be waived by failure to attack the charging affidavit at the proper time. In *Brown*, the Court noted that subject-matter jurisdiction is granted the trial court "only by the Constitution or by a valid statute. Such general jurisdiction of the subject-matter is not dependent on the existence of a good cause of action . . . , [or] the sufficiency of the bill or complaint." 219 Ind. at 259, 37 N.E.2d at 77. The information charging Colburn specified the crime of first-degree burglary by using the words of the statute. First-degree burglary, and entering to commit a felony as a lesser-included offense, are offenses over which the trial court has subject-matter jurisdiction. The State's failure to designate the specific underlying felonious intent did not, therefore, defeat the subject-matter jurisdiction of the court. By failing to properly attack the sufficiency of the information, Colburn has thus waived any error. *Burnett v. State* (1970), 253 Ind. 520, 255 N.E.2d 529; *Turner v. State* (1968), 249 Ind. 533, 233 N.E.2d 473.

Further, Judge White noted that when a stranger intrudes in another's home, whatever his primary intent may be, the intruder must have anticipated that confrontation was not unlikely:

[i]f a confrontation then occurs and he does commit an act of violence upon the person he thus confronts, the commission of the act is sufficient to justify the inference that he enetered with the specific intent to do what he did, provided the occasion arose. That he also had, or may have had, a different *purpose* or *reason* for breaking and entering would subtract nothing from the reasonability of inferring the concurrent intent to do violence if confronted.

154 Ind. App. at 518, 290 N.E.2d at 95.

Notwithstanding Colburn's alleged purpose to retrieve his daughter, the evidence permits the inference that he also had the necessary felonious intent at the time of entry. Colburn drove from Louisville, Kentucky to the Petersons' home in Marion, Indiana with a shotgun in his car. When Mr. Peterson arrived at the front door, Colburn, who stood outside with the gun aimed, threatened to kill Mr. Peterson unless the latter complied with his demands. Once inside, Colburn again threatened the Petersons and committed aggravated assault and battery.

When, as here, the evidence is sufficient to permit a reasonable inference of felonious intent, we will not examine the evidence further to detemine if the trier of fact also could have reasonably inferred a non-felonious intent. *Rollins v. State* (1977), 172 Ind.App. 369, 360 N.E.2d 279; *Majors v. State* (1974), 160 Ind.App. 124, 310 N.E.2d 283; *Farno v. State* (1974), 159 Ind.App. 627, 308 N.E.2d 724.

### III.

Colburn raises as a fundamental error the entry of judgment and sentence on both entering to commit a felony and aggravated assault and battery.

In *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893, the Indiana Supreme Court overruled *Sansom v. State* (1977), 267 Ind. 33, 366 N.E.2d 1171, and *Jones v. State* (1977), 267 Ind. 205, 369 N.E.2d 418 "insofar as they found that the offense of theft

'merged' into the offense of burglary." The same reasoning applies with respect to the two offenses here. The offense of entering to commit a felony requires proof of entry with merely a felonious intent, such as intent to commit aggravated assault and battery, while the offense of aggravated assault and battery requires the completed act but does not require proof of entry. Since both offenses require proof of separate facts, they are not the "same" under *Blockburger v. United States* (1932), 284 U.S. 299, and separate sentences may be imposed without violating the double jeopardy provisions of either the Indiana Constitution or the United States Constitution.

We therefore affirm the judgment of the trial court.

C. J. Buchanan concurs.

J. Sullivan concurs.

NOTE—Reported at 383 N.E.2d 378.