(No. 35786.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CALVIN COOLIDGE, Plaintiff in Error.

*Opinion filed February 1, 1963.*

534

Stanley M. Cahn, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Edward J. Hladis and Matthew J. Moran, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

An indictment returned to the criminal court of Cook County charged the defendant, Calvin Coolidge, with the

crime of assault with intent to commit robbery in one count, and with the crime of assault with intent to commit murder in another. After waiving a jury and submitting to a bench trial he was found guilty as charged in both counts. A sentence of imprisonment for a term of 10 to 14 years was imposed under the first count, while a concurrent sentence of imprisonment for a term of 15 to 20 years was imposed under the second. Defendant prosecutes this writ of error for review asserting that the incompetency of his appointed counsel and certain trial errors require a reversal of both convictions, or, alternatively, that the conviction of assault with intent to commit murder must be reversed due to the failure of the evidence to establish his guilt beyond a reasonable doubt.

Essential facts show that on August 1, 1959, about 9:30 A.M., defendant entered a grocery store operated by Clarence Tucker and made a small purchase of groceries. He returned about fifteen minutes later, ordered more groceries, then drew a knife and pointed it at Tucker and announced that it was a "stick-up." It is agreed that Tucker started screaming and grappling with defendant, but there is some conflict as to the use and whereabouts of the knife. Defendant testified the knife was knocked from his hand at the beginning of the struggle and that it remained on the floor until the police arrived some minutes later. Tucker, however, related that defendant retained and continued to wield the knife and that he, Tucker, sustained a cut which severed the tendons in the fingers of one hand when he sought to push the knife away.

Returning to the details of the struggle, Tucker testified that defendant knocked him to the floor, held him down by the neck, then grabbed a bottle and struck him over the head three or four times, inflicting wounds which damaged an eye and required sixteen stitches. He said defendant pushed him into a back room, demanded to know where all

the money was kept, then started to tie him up after he had answered that the only money was in the cash register.

Officer James McDonald, who came to the store in response to a radio call, testified that he heard noises in the back room and that, upon going there, he saw defendant kneeling over Tucker and punching him. The officer said that he placed defendant under arrest, that he found a bread knife with a 10 or 12-inch blade protruding from defendant's rear pocket, that defendant said he needed money because his wife was pregnant, and that Tucker was covered with blood from head to foot. Another officer, James Walsh, testified the knife had a 12-inch blade and that defendant had admitted purchasing it the morning of the robbery.

At the trial, defendant admitted the attempt to rob Tucker, but, as previously noted, stated that the knife had been knocked from his hand and expressly denied that he had ever intended to kill the complaining witness. He said he had hit Tucker with the bottle only after the latter had tried to hit him with a bottle, and that they had thereafter used only their fists.

It is tacitly conceded that this evidence is sufficient to support defendant's conviction of assault with intent to commit robbery, and we shall consider first whether it was likewise sufficient to establish beyond a reasonable doubt his guilt of the crime of assault with intent to murder.

The gist or essence of the crime of assault with intent to murder is a specific intent to take life and such intent must be proved as charged beyond a reasonable doubt. However, since intent is a state of mind, and, if not admitted, can be shown only by surrounding circumstances, it has come to be recognized that an intent to take life may be inferred from the character of the assault, the use of a deadly weapon and other circumstances. (*People* v. *Shields,* 6 Ill.2d 200; *People* v. *Bashic,* 306 Ill. 341.) It is not requisite or necessary that the party charged should have brooded over the intent, or entertained it for any considerable time,

but it is enough if at the instant of the assault he intended to kill the party assaulted, or it will be enough if he is actuated in making the assault by wanton and reckless disregard of human life that denotes malice, and the assault is made under such circumstances that, if death had ensued, the killing would have been murder. (*People* v. *Carter,* 410 Ill. 462; *Crowell* v. *People,* 190 Ill. 508.) As was pointed out in both *People* v. *Shields,* 6 Ill.2d 200, and *Weaver* v. *People,* 132 Ill. 536, since every sane man is presumed to intend all the natural and probable consequences flowing from his own deliberate act, it follows that if one wilfully does an act the direct and natural tendency of which is to destroy another's life, the natural and irresistible conclusion, in the absence of qualifying facts, is that the destruction of such other person's life was intended. And while some writers and early cases cited to us by defendant, (*e.g.,* Perkins on Criminal Law, chap. 6, sec. 7; 61 Col. L. Rev. 571; *Scott* v. *State,* (1886,) 49 Ark. 156; *White* v. *State,* (1882,) 13 Tex. App. 259,) have been critical of the view which permits specific intent to be inferred from the presumption that a man intended the natural and probable consequences of his voluntary act, this court, where the facts have justified its application, has consistently aligned itself with those jurisdictions adhering to the doctrine. *People* v. *Hawes,* 8 Ill.2d 501; *People* v. *Shields,* 6 Ill.2d 200; *People* v. *Carter,* 410 Ill. 462; *People* v. *Herbert,* 340 Ill. 320; *People* v. *Haskins,* 337 Ill. 131; *People* v. *Bashic,* 306 Ill. 341; *Crowell* v. *People,* 190 Ill. 508; *Crosby* v. *People,* 137 Ill. 325; *Weaver* v. *People,* 132 Ill. 536.

Under the facts before us it is also to be noted that although there may be an intent to commit one crime, such as robbery, there may be an alternative or concurrent intent to take life, necessary to the crime of assault with intent to commit murder. *People* v. *Bashic,* 306 Ill. 341; *People* v. Connors, 253 Ill. 266; *Hamilton* v. *People,* 113 Ill. 34.

Measuring by these established doctrines it emerges

clearly that the record here presents sufficient and satisfactory evidence to prove all elements of the charge of assault with intent to murder, and that the jury was justified in finding defendant guilty beyond a reasonable doubt. The circumstances show that defendant invaded the premises of the complaining witness for a criminal purpose, and that he deliberately and purposely armed himself with a dangerous weapon, thus manifesting knowledge that his venture could result in violence endangering life and limb, as it actually did. In considering defendant's preparations, we think significance may also be attached to his testimony that he used to trade at the store "all the time," and that he had been employed at a lounge a block away. Once inside the store, there is credible testimony that defendant attempted to stab Tucker with the knife and admitted proof that he struck his victim over the head with a bottle three or four times. Either weapon, in the manner used, was capable of producing death so that the crime would have been murder had death in fact ensued. Considering the viciousness of the assault, the weapons used, the fact that the blows with the bottle were directed to an extremely vital and vulnerable part of the human body, and the other circumstances showing a malicious heart and mind, we are satisfied that defendant was actuated by such wanton and reckless disregard of human life that his intent to take life may be clearly inferred.

We are not impressed with defendant's argument that the evidence shows he intended to do no more than to inflict bodily injury on Tucker, and that his desistance from killing Tucker, once the latter was subdued, shows a lack of intent to commit murder. While defendant's choice of weapons, and the manner of their use, does much to detract from the vitality of his first contention, the fact that the wounds inflicted did not cause death was not due to any choice or restraint on defendant's part, but solely to the fortunate chance that more critical parts of the body were missed. Nor is defendant aided by the circumstance that

he started to tie up Tucker once the latter was subdued. As stated before, it is sufficient if at the instant of the assault an accused intended to kill the party assaulted. Moreover, in view of the proof indicating that defendant was known in the store and the neighborhood, and his demands for information as to where "all of the money" was kept, his failure to kill the complaining witness can as well be attributed to the timely arrival of the police as to any forebearance on the defendant's part. In this regard, it was the uncontradicted testimony of officer McDonald that defendant had not ceased his assault when the police arrived, but was kneeling over Tucker's body and punching with his fists.

The contention of defendant that he was denied a fair trial because of the incompetence of his appointed counsel requires some detail of the proceedings below. When defendant was arraigned on October 1, 1959, the presiding judge inexplicably informed him that he was charged only with assault with intent to commit robbery. After defendant indicated that he had neither a lawyer nor funds to employ one, the public defender was appointed as his counsel and immediately waived a reading of the indictment and entered a plea of not guilty. The matter came up for trial before another judge on October 7, 1959, and, at the outset, the public defender made a motion to withdraw the plea of not guilty and to enter a plea of guilty. From the colloquy which followed, it is apparent that counsel had been unaware of the second count charging assault with intent to murder. However, upon learning of it, he argued vigorously that there had been no intent to commit murder and proposed that his client should be tried only upon the first count. The prosecutor voiced his agreement to this proposal, but immediately withdrew it when the complaining witness, who was present, made an objection saying that defendant had "just about killed me." Thereafter, defendant's counsel proposed that a trial be had only on the second count

and, when this offer was refused by the prosecutor, he caused a plea of not guilty to be entered as to both counts, waived a jury and proceeded with the trial before the court.

Based principally upon deductions drawn from the foregoing circumstances, it is contended that the public defender's lack of preparation as to the second count and his failure to secure a continuance for that purpose, deprived defendant of his right to effective assistance by competent counsel. In some manner not entirely clear, it is also urged that the supposed incompetence of counsel in these respects also fatally infected defendant's trial under the first count. However, under the circumstances peculiar to this record, we find that little merit attaches to these claims.

Both charges against defendant arose from the same occurrence and involved precisely the same witnesses, with the result that preparation on one count would qualify counsel to defend against the other charge, thus forestalling the need for any further delay. And when the matter of the second charge arose, counsel immediately argued there had been no intent to kill, indicating a familiarity with both his client's version of the facts of the case and the legal aspects of the charge. Thereafter, in the trial which followed, the record reflects a constant effort on counsel's part to establish by cross-examination and defense testimony that there had been no intent to murder. In short, there is nothing in this record which would permit us to hold that defendant's representation under either count was such as to deny him effective and competent assistance.

Furthermore, to warrant a reversal because of the incompetency of counsel, the record must clearly establish not only that counsel performed his trial duties in an incompetent manner, but also that defendant was substantially prejudiced thereby. (*People* v. *Robinson,* 21 Ill.2d 30; *People* v. *Morris,* 3 Ill.2d 437.) The evidence against defendant was overwhelming. He committed a brutal assault in an attempt to commit a robbery and was apprehended on the

premises in the act of beating his already seriously wounded victim. In our opinion there was nothing counsel could have done which would have changed the result, nor were there omissions in the defense which could be said to have operated to defendant's prejudice. Cf. *People* v. *Lopez,* 10 Ill.2d 237.

It is next contended that it was error to permit the complaining witness, Tucker, to upset "a court-approved agreement" whereby defendant was to plead guilty to the first count of the indictment and a *nolle prosequi* was to be entered as to the second count. This contention, however, is completely groundless and without support. The record, by which we are limited on review, does not disclose a "court-approved" agreement of such nature from which the State improperly withdrew, but only the unsuccesful efforts of counsel to reach such an agreement. The only "agreement" from which the State withdrew was the prosecutor's initial approval of a suggestion that defendant be tried only under the first count, and it nowhere appears that this suggestion was conditioned upon a withdrawal of the second count. Within this point of argument it is also claimed Tucker's remark to the effect that defendant "just about killed me," created prejudice which requires reversal. Apart from the concept that a trial court, sitting as the trier of fact in a criminal case, is presumed to consider only the competent evidence before it, (*People* v. *Morton,* 21 Ill.2d 139,) Tucker's unsolicited remark can hardly be said to have been prejudicial in view of the subsequent testimony at the trial.

After the court had found defendant guilty on both counts, his counsel made a motion for probation which the court first denied, saying: "The court has heard the evidence in this case and under no circumstances, no matter what the Probation Department finds, I wouldn't give him probation." Again, when the assistant State's Attorney expressed his belief that defendant was at least entitled to

make an application for probation the court remarked: "Very well, but it is a waste of time", then set the matter for hearing. Based upon these remarks, plus the fact the probation hearing revealed that defendant had no previous criminal record, it is here urged that the court was motivated by prejudice and committed an abuse of discretion in denying probation. We do not see in the court's remarks a manifestation of prejudice but, rather, a firm conviction based upon the evidence that the crimes of defendant were so serious that probation would not be justified. (Cf. *People* v. *Sudduth,* 14 Ill.2d 605; *People* v. *Brown,* 392 Ill. 519.) And while it would be enough to further point out that the discretion of the trial court in granting or refusing probation is not subject to review, (see: *People* v. *Hamby,* 6 Ill.2d 559, 563; *People* v. *Denning,* 372 Ill. 549,) we are constrained to remark that, despite any consideration of defendant's previous conduct, the proof in this record serves to clearly demonstrate that denial of probation was not an abuse of discretion.

Nor do we find merit to the final contention of defendant that the trial court abused its discretion by imposing excessive sentences. Both sentences were within the limits fixed by the legislature for the crimes charged, and both were fully justified by the evidence. Cf. *People* v. *Smith,* 14 Ill.2d 95; *People* v. *Dixon,* 400 Ill. 449.

The judgments of the criminal court of Cook County are affirmed. *Judgments affirmed.*