The People of the State of Illinois, Plaintiff-Appellee, *v*. Rosie Petty, Defendant-Appellant.

(No. 73-90;

Fifth District—January 23, 1975.

Robert E. Farrell and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, and Karen Munoz, Senior Law Student, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The defendant, Rosie Petty, was indicted for the offense of murder. A jury found the defendant guilty of murder and the circuit court of St. Clair County entered a judgment of conviction against the defendant. After the defendant's post-trial motion for a new trial was denied, a sentencing hearing was held and the defendant was sentenced to 14 to 45 years in the Illinois State Reformatory for Women. This appeal followed.

The defendant raises three contentions on this appeal. First, she contends that she was not proven guilty beyond a reasonable doubt of the offense of murder. Secondly, she contends that she was denied her right to a fair and impartial trial. And lastly, she contends that the maximum sentence imposed by the trial court was excessive.

■■ The defendant premises her first contention upon the alleged failure of the State to prove that she entertained the requisite *mens rea* to be convicted of the offense of murder. Section 9—1 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(1) and (2)) provides, in part, that:

> "(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
> (1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
> (2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another,
> ❋ ❋ ❋."

In *People v. Koshiol*, 45 Ill.2d 573, 262 N.E.2d 446, *cert. denied*, 401 U.S. 978, our supreme court noted that:

> "As to the question of the sufficiency of proof of specific intent the law is well settled that intent is a state of mind, and, if not admitted, can be shown by surrounding circumstances, and intent to take a life may be inferred from the character of the assault, the use of a deadly weapon and other circumstances. (*People v.*

*Shields,* 6 Ill.2d 200, 127 N.E.2d 440.) Also, 'Since every sane man is presumed to intend all the natural and probable consequences flowing from his own deliberate act, it follows that if one wilfully does an act, the direct and natural tendency of which is to destroy another's life, the natural and irresistible conclusion, in the absence of qualifying facts, is that the destruction of such other person's life was intended.' (*People v. Coolidge,* 26 Ill.2d 533, 537, 187 N.E.2d 694, 697.)" 45 Ill.2d 573, 578, 262 N.E.2d 446, 449.

In the instant case the defendant took the stand in her own behalf. She testified that she and the deceased, Nathaniel Lewis, had been romantically involved for quite some time, that she had lived with the deceased continuously for 3½ years, that she was pregnant and was miscarrying with the deceased's child, and that she had visited the deceased on the day of the alleged murder in an attempt to procure financial assistance for the payment of certain medical bills. The defendant repeatedly disclaimed any intent to kill the deceased. She further testified that only after the deceased advanced toward her brandishing a knife with a 7-inch blade and uttering gruesome threats did she shoot him in an attempt "to scare him * * * only trying to frighten him." This testimony, standing alone, may evidence sufficient provocation to require that the defendant be found either innocent of the offense charged, on the ground of self-defense, or guilty of a lesser offense, *i.e.,* voluntary manslaughter.

The defendant admitted, however, that she had left her home on the morning in question with a loaded gun concealed on her person. She also stated that after she shot the deceased she disposed of the weapon by tossing it in the box car of a passing train. When first interrogated by the police the defendant denied any responsibility for the death of the deceased. The record also includes the testimony of two of the deceased's sons who allegedly witnessed significant portions of the events immediately preceding and following the shooting of their father. Both testified that the defendant terminated her conversation with the deceased, left the presence of the deceased, and walked around the corner of their house, before she came back around the house and started shooting at the deceased. The older son, Nathanial Lewis, Jr., was, in fact, hit by one of the shots fired by the defendant. The testimony of the defendant is contradicted further by the medical testimony which revealed that the deceased "had a wound of his back underneath his right shoulder," "two other gunshot wounds in the back," and a "superficial wound of the right wrist," and that any one of the three major wounds could have been fatal. It is also noteworthy that no knife was recovered.

■■ Thus, the record reflects testimony which not only challenges the

credibility of the defendant, but conflicts with her initial description of the events surrounding the death of the deceased. Although certain testimony at the trial tended to corroborate some aspects of the defendant's testimony, the significant portions of such testimony were not confirmed and were often contradicted by the testimony of other witnesses. It was the province of the jury to determine whether they wished to accept the defendant's version of the episode or the testimony offered by the State. As the court stated in *People v. Pagan,* 52 Ill.2d 525, 534, 288 N.E.2d 102, the judgment of the trier of fact will not be set aside on review unless the proof of guilt is so unsatisfactory as to create a reasonable doubt as to the defendant's guilt. As did our supreme court in *Pagan,* we do not find the proof so unsatisfactory as to require a reversal, and we are satisfied, from a careful review of the entire record, that there was sufficient evidence to prove that the defendant harbored the requisite mental state to convict her of murder, *i.e.,* that the defendant's actions were neither the result of sudden and intense passion nor of serious provocation on the part of the deceased.

Having thus decided, we need not consider the defendant's request that we reduce the offense to voluntary manslaughter.

■■ Next, the defendant contends that she was denied a fair and impartial trial due to (1) the State's Attorney's repeated remarks and elicitation of testimony to the fact that the deceased was survived by four young children, (2) the inflammatory nature of the closing argument made by the State's Attorney, and (3) testimony elicited by the State's Attorney concerning an offense other than that charged by the indictment. We find that none of these particular circumstances, within the context of the record of the instant case, denied the defendant her constitutional right to a fair and impartial trial. In fact, many instances cited by the defendant as evidencing the State's Attorney's "prejudicial" remarks and elicitation of "prejudicial" testimony were clearly within the range of permissible latitude and, consequently, were admissible. Similarly, we find that the testimony concerning actions by the defendant which constituted a separate and distinct offense were properly admitted since its prejudicial effect was outweighed by its tendency to prove an important and disputed element in the State's case against the defendant, the defendant's *mens rea* at the time she allegedly committed the offense of murder. (See *People v. Melquist,* 26 Ill.2d 22, 185 N.E.2d 825, *cert. denied,* 372 U.S. 967.) The few remaining alleged instances of error, if not waived by the defendant's failure to object at trial (*People v. Edwards,* 55 Ill.2d 25, 302 N.E.2d 306; *People v. McCorry,* 51 Ill.2d 343, 282 N.E.2d 425), are manifestly insufficient to support the defendant's claim that she was denied a fair trial either when taken individually or

collectively. (See *People v. Wilson*, 51 Ill.2d 302, 281 N.E.2d 626.) Although the defendant was not afforded a perfect trial free from all error, she was afforded her constitutional right to a fair and impartial trial.

██ Finally, the defendant contends that the maximum sentence imposed upon her was excessive. Although this court has the power to reduce a maximum sentence (*e.g., People v. Tobin*, 2 Ill.App.3d 538, 276 N.E.2d 828), it is not our function to determine the propriety of the sentence imposed by the trial court based on what we might have done. Our function is, instead, to determine whether the trial court properly exercised its discretion in imposing sentence. (*People v. White*, 22 Ill.App.3d 180, 317 N.E.2d 323.) We have, under circumstances similar to the instant case, reduced a sentence imposed for murder from 50 to 70 years to 15 to 45 years. (*People v. Gill*, 7 Ill.App.3d 24, 286 N.E.2d 516.) We are unable to say, however, that the maximum sentence imposed in the instant case, 45 years, exceeded the discretionary authority vested in the trial court. Consequently, we will not reduce the sentence of 14 to 45 years imposed by the trial court in the instant case.

Having considered all of the assignments of error, we are of the opinion that the evidence was sufficient to establish the defendant's guilt, that she received a fair trial, free from prejudicial error, and that the maximum sentence imposed was not excessive. The judgment of conviction entered by the circuit court of St. Clair County is therefore affirmed.

Judgment affirmed.

JONES, P. J., and CARTER, J., concur.