The People of the State of Illinois, Plaintiff-Appellee, *v.* Tressie Johnson, Defendant-Appellant.

(No. 72-254;

Third District—May 9, 1975.

John Mathers and David B. Radley, of Peoria, for appellant.

Michael Mihm, State's Attorney, of Peoria (James Christy, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

After a jury trial in the Circuit Court of Peoria County, defendant Tressie Johnson was found guilty of the murder of her husband, Billy Johnson. The trial court denied defendant's post-trial motion for a new trial and sentenced defendant to the penitentiary for a term of not less than 14 nor more than 18 years. On appeal, defendant contends that the evidence was insufficient to prove her guilty of murder beyond a reasonable doubt, and that she was denied a fair trial as a result of the introduction of inadmissible testimony and physical evidence and because of improper closing argument.

According to the record, defendant shot and killed her husband on the morning of September 13, 1971, after an argument. The police arrived on the scene shortly after the shots were fired and saw Billy Johnson lying on the cement at the bottom of the front steps, and defendant kneeling inside the front door. After the victim was removed to a hospital, the officers went inside and found the defendant sitting on the stairs a few feet from the front door. Investigating officers found a .22-caliber pistol containing three spent and three unspent shells in a table drawer, an unfired round of ammunition on the floor near the front door, and pieces of loose flesh and bone adhering to the porch ceiling. One bullet was never recovered, one was found on the porch floor and one was removed from the skull of the deceased. A tool box, a carpenter's pouch or belt and articles of clothing were discovered near the steps to the front porch, but no loose tools or implements of any kind were found.

The prosecution testimony included statements made by defendant to the police after the shooting. Detectives who arrived on the scene immediately advised defendant of her constitutional rights which she said she understood. When a detective then asked her if she shot her husband, she replied that she didn't mean to, and when asked where the gun was, she said she threw it on the front porch. Defendant was taken to the Peoria Police Station and made a more complete statement approximately 2 hours after the shooting. According to this statement, Billy Johnson came home about 7:30 A.M. the morning of the shooting, went upstairs and began tearing apart the beds, saying that the children would have to sleep on the floor. He picked up his clothes and started downstairs. Defendant followed him and he turned around and grabbed her by the collar. When he reached the front door, he turned around and spit in her face, then walked across the porch and down the porch steps, and, upon the defendant calling him "dirty," the deceased turned around and was shot by defendant. Defendant stated she had been carrying the gun in her brassiere since 3 A.M. that morning for protection.

Nothing in this statement indicated that she was frightened or had acted in self-defense.

Defendant's evidence at the trial was comprised of the testimony of two police officers and the defendant. Although the officers' testimony corroborated the testimony of the State witnesses to a certain extent, one officer also testified to a prior statement given by defendant at the police station shortly after the shooting. In that statement defendant said that the argument that morning concerned decedent's arrival home in his girlfriend's car, that he started packing up his clothes and putting them in the trunk of the car, that he was tearing up the beds, and when defendant followed him downstairs, he grabbed her, pushed her down and spit in her face. She also said that she shot him as he was going down the porch steps, with no mention of any threat to her or that she acted in self-defense.

At the trial defendant gave a different version of the events which led up to the shooting. She said that deceased came home after being out all night, began cursing and tearing up the beds. During the ensuing argument Billy Johnson grabbed defendant, and attempted to push her down the stairs, which she resisted by holding onto his belt. At the bottom of the stairs, deceased pushed defendant to the floor, spit in her face, and then went out the door and down the steps. During this time defendant was screaming at deceased and calling him "dirty." Defendant testified that deceased turned around, picked up an object from his tool box and started toward her threatening her with bodily harm, saying he would show her how dirty he could be. In an attempt to scare him, defendant testified she shut her eyes, pulled the .22-caliber pistol from her bra, put it above her head and fired three times. She stated that at no time did she ever intend to kill her husband.

Defendant also testified to a fight with her husband occurring the day before the shooting, at which time the police took him into custody for a few hours. She said that her husband's relationship with another woman made her jealous and was the topic of frequent arguments. On the morning of the shooting, deceased had driven home in his girlfriend's car after being out all night. She also said that she carried the loaded pistol for her own protection for fear deceased would come home angry and bother her. In that event, she intended to shoot. Finally, she testified she did not see the weapon she claimed her husband picked up on the porch steps. No weapon of any kind was found near the victim.

■■ On appeal defendant initially contends that the evidence did not prove her guilty of murder beyond a reasonable doubt, and urges application of the long-standing rule that, when a murder conviction is based solely upon circumstantial evidence, the guilty of the accused must be

so thoroughly established as to exclude every other reasonable hypothesis. (*People v. Lewellen*, 43 Ill.2d 74; 250 N.E.2d 651 (1969); *People v. White*, 347 Ill. 576, 180 N.E. 415 (1932).) When, however, a defendant claims to have acted in self-defense, and the facts and circumstantial evidence against defendant are substantial, the jury is entitled to disbelieve defendant's testimony. (*People v. Benedik*, 56 Ill.2d 306, 307 N.E.2d 382 (1974); *People v. Wilkes*, 2 Ill.App.3d 626, 276 N.E.2d 761 (3d Dist. 1971).) In *Wilkes*, where the defendant admitted firing the fatal shot and argued that his unrefuted testimony of self-defense must be taken as true, the court ruled that, where a defendant's statement is contradicted by facts and circumstantial evidence, the jury need not believe the defendant even though he is not directly contradicted by eyewitnesses. In the case at bar, the facts and circumstantial evidence contradict defendant's self-defense claim. Defendant prepared herself for a conflict by placing the pistol in her bra some 3 hours before shooting the decedent, and, by her own statement, the decedent was at least 8 feet from her when she fired.

In the present case, defendant's claim of self-defense rests upon her testimony that when she shot Billy Johnson, he was coming towards her with a tool or weapon he had picked up. No such weapon, however, was ever found in the vicinity of the shooting. In defendant's first two statements to police, she did not mention that deceased had a weapon or that she was acting in self-defense. The record thus sets out contradictory versions of the fatal shooting and the account defendant gave at trial differed materially from the statements given the day of the shooting, thus raising a question of her credibility. It is the province of the jury to draw inferences from the evidence and to determine the credibility of the witnesses and the weight to be given to their testimony. (*People v. Zuniga*, 53 Ill.2d 550, 293 N.E.2d 595 (1973).) It is not necessary that the trier of fact be required to search out a series of potential explanations compatible with innocence and elevate them to the status of a reasonable doubt. (*People v. Benedik.*) In this case the jury obviously did not believe the defendant's in-court testimony. The determination of the jury will not be set aside on review unless the evidence is so unsatisfactory as to create a reasonable doubt as to defendant's guilt. *People v. Benedik; People v. Zuniga.*

■■ After a careful review of the entire record, we are satisfied that there was sufficient evidence to prove that defendant harbored the requisite mental state to sustain a murder conviction and that her actions were not the result of sudden intense passion nor of serious provocation by the deceased. Having so decided we need not consider the defendant's request that we reduce the offense to voluntary man-

slaughter. *People v. Petty*, 25 Ill.App.3d 35, 322 N.E.2d 603 (5th Dist. 1975).

Defendant complains that the trial court improperly allowed the pistol to be admitted into evidence because it was never identified as the murder weapon, even though defendant admitted that the murder weapon "looked like" her pistol. Illinois law does not require that a weapon be proved to be the weapon actually used, but only that defendant had in her possession a weapon suitable for the commission of the crime. *People v. Moore*, 42 Ill.2d 73, 246 N.E.2d 299 (1969), *reversed in part*, 408 U.S. 786, 33 L.Ed.2d 706, 92 S.Ct. 2562 (1972), *rehearing denied*, 409 U.S. 897, 34 L.Ed.2d 155, 93 S.Ct. 87 (1972).

Defendant also contends that the search and seizure of the pistol was illegal and cannot be used as evidence to support a conviction for murder. Defendant made no motion to suppress the pistol in the trial court and did not object to its admission in evidence. It has been repeatedly stated that reviewing courts will not consider the question of illegal search and seizure where it has not been raised in the trial court. *People v. Washington*, 45 Ill.2d 477, 259 N.E.2d 276 (1970); *People v. Adams*, 41 Ill.2d 98, 242 N.E.2d 167 (1968); *People v. Moore*, 43 Ill.2d 102, 251 N.E.2d 181 (1969); *People v. Burroughs*, 10 Ill.App.3d 477, 294 N.E.2d 325 (3d Dist. 1973).

■■ Defendant however urges that this question should be considered for the first time on appeal as a plain error affecting substantial rights of the defendant under Supreme Court Rule 615(a) (Ill. Rev. Stat., ch. 110A, par. 615(a)). The "plain error" doctrine does not require that a reviewing court consider all errors involving substantial rights even though not brought to the attention of the trial court. (*People v. Pickett*, 54 Ill.2d 280, 283, 296 N.E.2d 856, 858 (1973).) The rule is permissive, and it is within the discretion of the reviewing court whether to consider an error not raised in the trial court. (*People v. McAdrian*, 52 Ill.2d 250, 255, 287 N.E.2d 688 (1972).) In this case where defendant has admitted the fatal shooting, we are persuaded that we need not consider the question of illegal search and seizure where it has not been raised in the trial court. See *People v. Burroughs*.

■■ Defendant's next contention is that she was denied a fair and impartial trial because (1) hearsay evidence concerning ballistics tests was improperly admitted, and (2) police officers not qualified as experts were improperly permitted to testify to pieces of matter found on the porch and identified as flesh or bone and to the unfired ammunition found inside the front door. Defendant did not object to this evidence during the trial nor in her post-trial motion, and she now contends that the trial court should have excluded it on its own motion. The rule,

as stated in *People v. Thompson,* 48 Ill.2d 41, 268 N.E.2d 369 (1971), is that objections to evidence are waived by failure to interpose proper objections in apt time, even though based on constitutional grounds. Therefore, we need not consider these alleged errors, and we do not find this to be an appropriate case for application of the "plain error" doctrine discussed above. We also note that the ballistics testimony complained of was elicited by defense counsel during the cross-examination of a prosecution witness. Counsel thereby opened the door to the hearsay testimony and cannot now complain. *People v. Denham,* 41 Ill.2d 1, 241 N.E.2d 415 (1968); *People v. Burage,* 23 Ill.2d 280, 178 N.E.2d 389, *cert. denied,* 369 U.S. 808, 7 L.Ed.2d 555, 82 S.Ct. 651 (1961); *People v. Heller,* 131 Ill.App.2d 799, 267 N.E.2d 685 (3d Dist. 1971).

■■ Defendant also objects to the admission into evidence of photographs depicting the body of the victim, and photographs of the interior of the house. Defendant contends that the photographs of the deceased were prejudicial and without probative value. It is well established, however, that the admission into evidence of photographs of a murder victim is within the sound discretion of the trial court. (*People v. Williams,* 60 Ill.2d 1, 322 N.E.2d 819 (1975); *People v. Speck,* 41 Ill.2d 177, 242 N.E.2d 208 (1969); *People v. Field,* 13 Ill.App.3d 74, 299 N.E.2d 754 (1973).) In the present case, the coroner's physician testified regarding the extent and location of the wounds, and the photographs are therefore admissible to aid the jury in understanding the medical testimony. *People v. Smith,* 5 Ill.App.3d 648, 283 N.E.2d 727 (5th Dist. 1972); *People v. Ellison,* 121 Ill.App.2d 149, 257 N.E.2d 199 (1970).

Defendant argues that, by introducing the photographs of the interior of her home, the prosecution attempted to discredit her as a homemaker, thereby prejudicing her in the eyes of the jury. Officers testified regarding the scene of the crime and established that the photographs depicted the premises as they existed at the time of the shooting. The photographs would therefore be admissible to assist the jury in understanding the scene of the homicide as testified to by the witnesses. *People v. Smith; People v. Johnson,* 105 Ill.App.2d 204, 245 N.E.2d 85 (1969).

Defendant also assigns as error several instances of prosecutorial impropriety during closing remarks which she claims denied her right to a fair trial. It is argued that the prosecutor made assumptions not based on the evidence in the case which were not proper subjects of argument to the jury. (*People v. Beier,* 29 Ill.2d 511, 194 N.E.2d 280 (1963).) The prosecution contends, to the contrary, that statements of counsel which are based on facts and circumstances proved, or upon legitimate in-

ference therefrom, do not transcend the bounds of propriety. (*People v. Miller*, 13 Ill.2d 84, 148 N.E.2d 455 (1958).) After reviewing the statements in the context of the evidence, we believe the statements represented arguable inferences from the evidence and we need not discuss those statements in detail. We conclude that none of the statements exceeded the bounds of legitimate argument. *People v. Butler*, 21 Ill.App.3d 331, 315 N.E.2d 144 (3d Dist. 1974).

■■ Further complaint is made of the prosecutor's statement:

> "and with that the State rested its case, because the statement she gave to Sergeant Wilson just plain convicts her of murder."

Defendant's objection was sustained, but the trial court did not strike the objectionable statement or admonish the jury to disregard it at the time, but did give an instruction which admonished the jury to disregard statements to which objections had been sustained (IPI—1.03). The identical factual circumstance was presented to this court in the recent case of *People v. Simmons*, 21 Ill.App.3d 310, 315 N.E.2d 226 (3d Dist. 1974). In *Simmons*, we found that the court's failure to admonish at the time the objection was sustained is not fatal in light of the later instruction. The trial court is therefore under no duty to add the specific instruction sua sponte. (*People v. Arnold*, 12 Ill.App.3d 826, 299 N.E.2d 446 (1st Dist. 1973.) We further find none of the asserted errors in final argument to be so prejudicial, even when considered as to their cumulative effect, as to deprive the defendant of a fair trial.

■■ Finally, defendant contends that because the prosecutor handling the case was taken ill and unable to remain in court after his closing argument, it was error not to recess the proceedings until the attorney could continue, or not to declare a mistrial. However, defendant did not request a continuance or move for a mistrial, and it was defense counsel who called the jury's attention to the prosecutor's illness. Defendant asserts that the jury's attention was diverted from defendant's closing argument as a result of their concern and sympathy for the sick prosecutor. Defendant, however, has not cited any cases in support of this proposition, nor has she shown any prejudice resulting therefrom. Considering all the circumstances, we find no merit in defendant's argument.

Judgment affirmed.

STOUDER, P. J., and BARRY, J., concur.