THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MAURICE JACKSON, Defendant-Appellant.

First District (4th Division)   No. 60459

Opinion filed September 8, 1976.

James J. Doherty, Public Defender, of Chicago (Andrew J. Kleczek and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Maurice Jackson, was charged by indictment with the offenses of arson (Ill. Rev. Stat. 1967, ch. 38, par. 20—1(a)), attempt to commit arson (Ill. Rev. Stat. 1967, ch. 38, par. 8—4), and solicitation to commit arson (Ill. Rev. Stat. 1967, ch. 38, par. 8—1). Subsequent to the defendant (1) entering a plea of not guilty to said charges at his arraignment and (2) requesting and receiving certain pretrial discovery information, the cause proceeded to a bench trial. At the conclusion of such proceeding, the defendant was found guilty of solicitation to commit arson but not guilty of arson nor attempt to commit arson. After a hearing in aggravation and mitigation, he was sentenced to the penitentiary for eight to 15 years, such term to run consecutively with an unrelated theft sentence.

In seeking a reversal of his conviction, or, in the alternative, a modification of his sentence, the defendant contends on review that (1) the trial court's finding of not guilty of arson and attempt to commit arson but guilty of solicitation to commit arson is inconsistent and thus requires a reversal; (2) the evidence is insufficient to prove him guilty beyond a reasonable doubt; and (3) his sentence is excessive and should conform to the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 *et seq.*).

A review of the record reveals that on April 25, 1968, approximately at 1:30 p.m., Tondelayo Clinton and her cousin, Jeanette Wilson, were shopping for shoes at a Walgreen drugstore located in the downtown area of Chicago, Illinois. While in the basement of said store, they were approached by the defendant who offered them $50 apiece if they would "[j]ust walk into Wieboldt's and start a fire." After the defendant told them to meet him in the basement of Walgreen's within 30 minutes, the girls proceeded to the third floor of Wieboldt's where Tondelayo Clinton commenced a fire by igniting a bedspread with her cigarette lighter. They thereupon attempted to leave the store via the elevator, but were apprehended by John Bibbs, a security agent, who was notified of the fire as well as given a description of the girls by Mary DeSaegher, a saleswoman in the linen department where the fire occurred.

Mr. Bibbs took the girls to the store's security office where they not only acknowledged that they started the fire but also explained their reason for such conduct. Subsequent to relating that they were supposed to meet the defendant back at Walgreen's, they were escorted to said store by Mr. Bibbs and Mike Panopoulos, the director of security for Wieboldt's. The four individuals proceeded to the basement and waited for the defendant for approximately 20 to 30 minutes. Upon his failure to arrive, they went to the first floor of the store and, after 15 minutes had elapsed, they observed the defendant attempt to enter the store through the revolving

doors, but he stepped away and departed down the street. Tondelayo Clinton and her cousin caught up to him and then informed him that they set the fire and now wanted their money. The defendant replied, "Well, fifty dollars, right?" After Miss Clinton responded in the affirmative, the defendant asked Jeanette Wilson whether she "want[ed] fifty dollars too. "Mike Panopoulos, who was situated in such a manner so that he could overhear the conversation between the defendant and the girls, then arrested the former who accused the girls of having consorted with the police. The defendant was thereafter taken into custody by two officers from the bomb and arson unit of the Chicago Police Department and charged with arson (Ill. Rev. Stat. 1967, ch. 38, par. 20—1(a)), attempt to commit arson (Ill. Rev. Stat. 1967, ch. 38, par. 8—4), and solicitation to commit arson. Ill. Rev. Stat. 1967, ch. 38, par. 8—1.

On May 22, 1968, the defendant, through his privately retained counsel, entered a plea of not guilty to the above charges. Thereafter, defense counsel moved for a bill of particulars which the State answered on August 14, 1968. Subsequent to defense counsel withdrawing as attorney of record for the defendant, the public defender requested and the trial court ordered on July 1, 1969, a psychiatric examination by the behavior clinic of the circuit court of Cook County. On August 13, 1969, the clinic's report was filed indicating that the defendant was (1) cognizant of the nature of the charges brought against him and (2) capable of cooperating with an attorney.

After the defendant voluntarily waived his right to either a public defender or a bar association attorney as well as a jury trial on three separate occasions,[1] the cause proceeded to a bench trial on October 27, 1969. Subsequent to both sides waiving opening argument, the State commenced its case-in-chief by calling Mary DeSaegher who testified as to her involvement in the instant case. Tondelayo Clinton was next to take the stand and she recounted the transpiration of events of April 25, 1968, which included (1) the defendant's monetary offer to her and her cousin to start a fire in Wieboldt's; (2) her admission to the security officer that she commenced the fire because of the defendant's offer; and (3) the substance of her and her cousin's conversation with the defendant after they had completed their act. This latter topic of discussion, which also consisted of their prior wait and observance of the defendant at Walgreen's, was corroborated by the testimony of Mike Panopoulos and

---

[1] A perusal of the record evinces that the trial court respectively admonished the defendant on July 23, 1969, August 27, 1969, and October 21, 1969, of his constitutional rights to counsel and a jury trial. While the defendant acknowledged the availability of these rights, he repeatedly refused a court-appointed counsel on the basis that God would conduct his representation. Moreover, on the latter two dates, the defendant voluntarily and knowingly signed jury waivers. Despite such conduct, the trial court appointed a public defender to be in the courtroom in case the defendant needed any guidance.

John Bibbs. Moreover, Mr. Panopoulos indicated that the exact amount of damage caused by the fire was determined by the management to be $240.

At the conclusion of the testimony of these four witnesses, whom the defendant respectively declined to cross-examine, the State rested. After the defendant responded in the negative to the trial court's inquiries concerning whether he wanted to (1) introduce any evidence or (2) confer with an attorney, the trial judge found the defendant guilty of solicitation to commit arson, but not guilty of arson nor attempt to commit arson. Subsequent to the trial court entering a judgment on its finding regarding the solicitation count, a hearing in aggravation and mitigation ensued.

In aggravation, the prosecutor requested a severe sentence since the defendant was already under a sentence of four to eight years for theft as well as the fact that he received an 18-month sentence for interstate transportation of a stolen vehicle. After the defendant stated in mitigation that he had "nothing to do with this [offense]," the trial court sentenced him to a prison term of 8 to 15 years. On May 21, 1975, the defendant's late notice of appeal was granted by this reviewing court.

We first consider the defendant's contention that the trial court's findings of not guilty of arson and attempt to commit arson, but guilty of solicitation to commit arson are inconsistent and require a reversal. In support of such assertion, the defendant maintains that since the trial court accepted Tondelayo Clinton's testimony on the issue of solicitation, its finding on such issue is logically supportable only if it also found that she was guilty of attempt to commit arson and that the defendant was accountable for her acts so as to make him culpable for the same offense. However, in light of the trial court acquitting the defendant on the attempt count, the defendant argues that his conviction is factually as well as logically insupportable. We are not in accord.

■■ It is well settled in Illinois both by legislative enactment (Ill. Rev. Stat. 1973, ch. 38, par. 8—5) and judicial precept (*People v. Schmidt*, 25 Ill. App. 3d 1035, 1036, 324 N.E.2d 246, 247) that no individual shall be convicted of both the inchoate and the principal offense. Moreover, it has been held that when verdicts inconsistently acquit and convict an individual of separate crimes arising from the same act, logical consistency in such verdicts is not necessary so long as the verdicts are not legally inconsistent. (*e.g., People v. Hairston*, 46 Ill. 2d 348, 361-62, 263 N.E.2d 840, 849, *cert. denied.*, 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658; *People v. Taylor*, 36 Ill. App. 3d 898, 900, 344 N.E.2d 742, 743.) In ascertaining whether this latter aspect of the above tenet has been satisfied, it has uniformly been recognized that there is no legal inconsistency in verdicts of acquittal and conviction for purposes of

requiring a reversal where the controverted crimes are composed of different elements but arise from the same set of facts. *E.g., People v. Joyner*, 50 Ill. 2d 302, 308-09, 278 N.E.2d 756, 760; *People v. Latham*, 31 Ill. App. 3d 66, 67, 333 N.E.2d 583, 584.

■■■ Applying such precepts to the instant case, it is apparent that the defendant's contention is untenable. In the first place, since solicitation to commit arson is an inchoate offense to the principal offenses of arson and attempt to commit arson, (see *People v. Hairston*, 46 Ill. 2d 348, 356-57, 263 N.E.2d 840, 846-47; S.H.A., 1972, ch. 38, par. 8—5, Committee Comments at p. 579), we believe that the trial judge was merely following the above enunciated tenet when he accordingly rendered his decision as to the three charges with which the defendant was accused. Moreover, an analysis of the crimes charged in the instant case reveals that they are composed of different elements.[2] Thus, even though such offenses arose out of the same factual situation, we cannot ascribe any legal inconsistency in the trial judge's determinations. We therefore conclude that the acquittal of the defendant on the charges of arson (Ill. Rev. Stat. 1967, ch. 38, par. 20—1(a)) and attempt to commit arson (Ill. Rev. Stat. 1967, ch. 38, par. 8—4) does not require a reversal of his conviction for solicitation to commit arson. Ill. Rev. Stat. 1967, ch. 38, par. 8—1.

We further believe that there is no propriety to the defendant's contention that the evidence concerning the solicitation count was vague and uncertain and therefore insufficient to prove him guilty beyond a reasonable doubt. According to the statute in effect at the time of the defendant's prosecution, a person committed solicitation when, "with intent that an offense be committed, he * * * encourag[ed] or request[ed] another to commit that offense." (Ill. Rev. Stat. 1967, ch. 38, par. 8—1.) While the defendant focuses on the intent component of this legislative enactment and maintains that the evidence was insufficient to prove that this element was met since nothing was elicited at trial concerning his interest, before or after the incident at Wieboldt's, in the location, type or extent of the fire, it is important to note that the requisite intent with which an act is done may be inferred from the act itself as well

---

[2] According to section 20—1(a) of the Criminal Code, a person is guilty of committing arson when, "by means of fire or explosive, he knowingly damages any real property, or any personal property having a value of $150 or more, of another without his consent." (Ill. Rev. Stat. 1967, ch. 38, par. 20—1(a).)

As far as the offense of attempt is concerned, section 8—4 of the Criminal Code provided in relevant part that an individual "commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense". (Ill. Rev. Stat. 1967, ch. 38, par. 8—4.)

Contrary to the requisites; contained in the above statutes, section 8—1 of the Criminal Code delineates the following elements for the offense of solicitation:

"A person commits solicitation when, with intent that an offense be committed, he commands, encourages or requests another to commit that offense." Ill. Rev. Stat. 1967, ch. 38, par. 8—1.

as surrounding circumstances that legitimately permit this inference. *E.g., People v. Parker*, 35 Ill. App. 3d 870, 874, 343 N.E.2d 52, 55; *People v. Wilcox*, 33 Ill. App. 3d 432, 438, 337 N.E.2d 211, 217.

■■ Considering such precept in the context of the case at bar, we are of the opinion that there was ample evidence to prove the defendant guilty of solicitation to commit arson. As the testimony of Tondelayo Clinton revealed, the defendant came up to her and her cousin in the basement of Walgreen's and offered them $50 apiece if they would go into Wieboldt's and start a fire. While the defendant chastises such testimony on the basis that he never informed the girls as to (1) what merchandise should be set on fire, (2) the type of fire he desired, or (3) how and where it should be set, he more importantly does not controvert on review that he made a request to the two girls to commence a fire in Wieboldt's. Since an individual is presumed to intend the natural and probable consequences of his actions (*e.g., People v. Coolidge*, 26 Ill. 2d 533, 537, 187 N.E.2d 694, 697; *In re Weigler*, 37 Ill. App. 3d 478, 481, 346 N.E.2d 171, 173), we believe that the absence of such specifications in the defendant's offer did not preclude the bifurcated criteria of section 8—1 of the Criminal Code (Ill. Rev. Stat. 1967, ch. 38, par. 8—1) from being met.

Besides the defendant's initial offer to the two girls, his conduct subsequent to the fire also evinced his intent that arson be committed. According to the testimony of both Miss Clinton and Mike Panopoulos, when the girls met with the defendant to receive their compensation, the defendant asked them if they had earned their money. After they responded in the affirmative and the defendant was placed under arrest by the security officers, the latter called the girls traitors and accused them of conspiring with the police. While the defendant attempts to renew his specificity contention to this second meeting with the girls by claiming that he never inquired as to the extent of the fire, we find that in light of the above testimony and the reasonable inferences therefrom, the evidence was sufficient to show an intent to destroy property of the value required by section 20—1(a) of the Criminal Code (Ill. Rev. Stat. 1967, ch. 38, par. 20—1(a)).

The defendant's final contentions that (1) his sentence was excessive and (2) he should be afforded the benefits of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 *et seq.*) are also without merit. With regard to the latter assertion, section 8—2—4 of the Unified Code of Corrections does avail its sentencing provisions to a prosecution of an offender which commenced prior to the effective date of this legislative enactment provided that "the offense being prosecuted has not reached the sentencing stage or a final adjudication * * *." (Ill. Rev. Stat. 1973, ch. 38, par. 1008—2—4.) Moreover, judicial construction

of this statutory provision has indicated that a "final adjudication" has not occurred and the sentencing provisions of the Code are applicable to situations where the offender had already been sentenced prior to the effective date of the Code but his direct appeal was still *pending as of such effective date.* E.g., *People v. Harvey,* 53 Ill. 2d 585, 590, 294 N.E.2d 269, 272; *People v. Chupich,* 53 Ill. 2d 572, 584, 295 N.E.2d 1, 8; *People v. Ambrose,* 28 Ill. App. 3d 627, 633, 329 N.E.2d 11, 17; *People v. Evans,* 12 Ill. App. 3d 1036, 299 N.E.2d 364 (abstract opinion).

■■ Applying such edicts to the instant case, it is evident that the benefits of the sentencing provisions of the Unified Code of Corrections were not available to the defendant. Whereas the record reveals that the defendant was sentenced[3] prior to when the Code became effective on January 1, 1973, his appeal of this matter was not pending on such effective date. On the contrary, the defendant's request for leave to file a late notice of appeal was allowed on May 27, 1975, nearly 2½ years after the effective date of the Code. Thus, consistent with our prior considerations of this issue (*People v. Wright,* 29 Ill. App. 3d 574, 331 N.E.2d 114 (abstract opinion); *People v. Casillas,* 27 Ill. App. 3d 73, 326 N.E.2d 537 (abstract opinion)), the instant action had already reached a final adjudication by January 1, 1973, and the defendant was precluded from availing himself of the Code's sentencing provisions.

■■■ We also do not subscribe to the proposition that the defendant's sentence was excessive. Although the defendant maintains that the trial court erred in making his sentence run consecutively to a prior State sentence of four to eight years for theft, it must be remembered that consecutive sentences are allowed only where one is convicted of two or more crimes which are not a part of the same course of conduct and where there is a change in the nature of the criminal objective. (*People v. Brown,* 31 Ill. App. 3d 547, 549, 334 N.E.2d 323, 324.) Since the theft offense stemmed from an entirely unrelated indictment, it is apparent that the defendant's sentence for solicitation to commit arson was not part of the same course of conduct and did entail a change in the nature of his criminal objective. Moreover, considering (1) the seriousness of the offense at bar, (2) the defendant's prior convictions and (3) his general moral character (*e.g., People v. Morgan,* 59 Ill. 2d 276, 282, 319 N.E.2d 764, 768; *People v. Perry,* 38 Ill. App. 3d 81, 85, 347 N.E.2d 340, 344), all of which were brought to the attention of the trial court during the hearing in aggravation and mitigation, we believe that such consecutive sentence was not excessive and hence, should not be disturbed.

Despite our findings that (1) the Unified Code of Corrections is inapplicable to the case at bar and (2) the defendant's consecutive sentence

---

[3] The defendant was sentenced on October 27, 1969.

is not excessive, we still are of the opinion that the defendant's sentence should be modified. As the State concedes in its brief, when the defendant was sentenced, the penalty for solicitation could be the maximum for the crime solicited so long as it did not exceed the maximum for attempt. (Ill. Rev. Stat. 1967, ch. 38, par. 8—1(b).) Since the offense of arson at that time had an indeterminate maximum term and only a one-year minimum term (Ill. Rev. Stat. 1967, ch. 38, par. 20—1) while attempt to commit arson would have subjected the defendant to a maximum sentence of 14 years (Ill. Rev. Stat. 1967, ch. 38, par. 8—4(c)(2)), we accordingly hold that the defendant's sentence of eight to 15 years should be reduced to eight to 14 years.

For the foregoing reasons, we affirm the judgment of conviction as well as the defendant's sentence with the exception that his prison term be reduced from eight to 15 years to eight to 14 years.

Judgment affirmed and sentence modified.

JOHNSON, P. J., and DIERINGER, J., concur.