THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALVIN VARNELL, Defendant-Appellant.

Second District    No. 76-498

Opinion filed November 21, 1977.

Ralph Ruebner and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Defendant Alvin Varnell appeals from a conviction of aggravated battery and armed violence in the circuit court of Lake County following a jury trial. Defendant's conviction for armed violence was vacated and he was sentenced to one to three years on the aggravated battery. On appeal, defendant contends that the State failed to prove that he was

guilty beyond a reasonable doubt in that the proof presented at trial (1) failed to establish an intent to commit aggravated battery, (2) failed to prove that the defendant was present at the scene of the crime, and (3) failed to establish that the cane gun was capable of firing bullets or that the defendant actually fired this cane gun. After a review of the entire record, we are of the opinion that these contentions are wholly without merit, and we affirm.

The above charges arise from a shooting incident in front of Fernando's Tap (hereinafter the tavern) in Waukegan, Illinois, which occurred late in the evening of March 27, 1975. At 11:30 p.m., two young black males entered the tavern. One of the youths carried a radio and the other a cane. They went among the patrons attempting to sell the radio; an argument ensued, and Rubin Naranjo and other patrons pushed the two young men out the front door and into the street. Outside Naranjo was then told by the other black youth he was holding, "Let me go before my friend shoots you." Naranjo then walked back into the tavern, where he heard two consecutive shots coming from the street.

Irma Morales, who had been babysitting for the Ayala family, came to the window of the apartment above the tavern at the request of David Ayala to observe the disturbance below. She saw a man in the street pointing something towards her window and then heard a shot. She then heard another shot, which entered her head. She was required to spend a month in a hospital and eight months in a nursing home. The victim remains partially paralyzed, but at the trial of this cause positively identified the defendant as the man who shot her.

David Ayala, who had been at a window above the tavern and had known the defendant for four years, made a positive photographic identification of the defendant as the one he had seen fire the shots from the street below and leave in a light blue Ford. The witness also made a photographic identification of Jerome Barnes as having been one of the individuals in the vicinity of the shooting.

Rubin Naranjo made a photographic identification of Tyrone Barnes as having been one of the two men who entered the bar. Tyrone Barnes' brother, Jerome Barnes, was the owner of a blue Ford Falcon in March of 1975.

Robert Evans testified that he saw the defendant and Tyrone Barnes walk into the tavern and come out a short time later, just prior to the incident. Fernando Ayala, the owner of the tavern and bartender that night, identified the defendant as the man with the cane in the bar. Chon Morales, a bartender at the tavern that night, also identified photographs of the defendant as one of the two men who were attempting to sell a radio in the tavern.

Defendant testified at trial that he played cards at another location until 10:30 p.m. on this evening and then came home and watched television with his three sisters.

Defendant argues first that the evidence presented by the State did not establish that the defendant had the proper mental state for aggravated battery and, thus, did not prove him guilty beyond a reasonable doubt. The defense contends that the evidence at trial did not prove that the defendant intentionally or knowingly fired the cane gun with the conscious objective of causing great bodily harm to Irma Morales or that he fired the cane gun with the knowledge that great bodily harm to Irma Morales was practically certain to occur because of his act. (Ill. Rev. Stat. 1975, ch. 38, pars. 4—4, 4—5.) The defendant, although not admitting his presence at the scene, contends that under the circumstances with which the defendant was confronted—a crowd of people that had just evicted him from a public tavern—the defendant at most meant only to fire into the air to protect himself and his friend from the crowd. Defendant's argument is without merit.

The aggravated battery statute provides that the above offense is committed when:

"(a) A person who, in committing a battery, *intentionally or knowingly* causes great bodily harm, or permanent disability or disfigurement commits aggravated battery." (Emphasis added.) or

"(b) A person who, in committing a battery either:

(1) Uses a deadly weapon; * * *." Ill. Rev. Stat. 1975, ch. 38, pars. 12—4(a), 12—4(b)(1).

The offense of battery is defined as follows under the Criminal Code of 1961:

"(a) A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." Ill. Rev. Stat. 1975, ch. 38, par. 12—3(a).

It is well settled that a person is presumed to intend the natural and probable consequences of his deliberate acts. (*People v. Coolidge* (1963), 26 Ill. 2d 533, 187 N.E.2d 694; *People v. Jackson* (1976), 42 Ill. App. 3d 322, 355 N.E.2d 653.) It is also well established that the requisite intent can be shown by the surrounding circumstances, including the actions of the defendant. *People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, *cert. denied*, 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209 (1971); *People v. Walker* (1976), 44 Ill. App. 3d 494, 358 N.E.2d 672.

■■ The surrounding circumstances in the instant cause show a defendant who fired a gun, not up in the air, but directly at a window

above the tavern from which he had just been expelled. Both Irma Morales and David Ayala observed the defendant point the cane gun directly at this window and heard the two shots. Thus, the jury could have inferred from this action that the defendant fired this cane gun with the conscious objective of causing harm to the tenants above the tavern or that he most certainly fired his weapon, after pointing it at this window, with the knowledge that harm to someone in the window was practically assured by his actions. *People v. Simental* (1974), 21 Ill. App. 3d 794, 315 N.E.2d 903 (abstract).

■■ However, even assuming arguendo that the defendant only meant to frighten the group of people outside the tavern by pointing his cane ·gun at them and shooting above them as defendant contends, this intended, unlawful act, to wit an assault, however, resulted in one of the bullets striking Irma Morales—the natural and probable consequence of his deliberate act of firing the cane gun twice to frighten the crowd. Accordingly, the defendant is responsible for his unintended act of shooting Irma Morales and was properly found to have the wrongful intent or knowledge that he was performing an unlawful act in firing the cane gun at the crowd. Thus, this evidence is sufficient to support a conviction for aggravated battery under the doctrine of transferred intent. *People v. Hickman* (1973), 9 Ill. App. 3d 39, 291 N.E.2d 523.

*People v. Barrington* (1973), 15 Ill. App. 3d 445, 304 N.E.2d 525, cited by defendant, is distinguishable from the case at bar. In *Barrington*, a school teacher's conviction for battery was reversed because the evidence showed the defendant *recklessly* pushed over a metal coat rack and injured two cheerleaders who he did not know were sitting on the coat rack. The court found that the evidence did not demonstrate beyond a reasonable doubt that the defendant either pushed the coat rack with the knowledge that harm would result to these cheerleaders or that the defendant was consciously aware that harm was practically certain as a result of his conduct.

In the instant case, however, the defendant was most surely either consciously aware or knew that if he fired a cane gun over a crowd of people, harm to an individual was certainly the natural and probable consequence of his deliberate act. *People v. Coolidge* (1963), 26 Ill. 2d 533, 187 N.E.2d 694.

Defendant also argues on appeal that the evidence does not establish that he was present at the scene of this incident. Defendant presents no authority and merely contends that his alibi witnesses—his three sisters— fully corroborate his story that he was home watching television with his sisters at the time of the shooting. The defense also contends that the man who had the cane gun had scars on his face and was wearing a brown

leather jacket, while the defendant had no scars and wore a red, black and white coat. Defendant's position, however, does not comport with the evidence on which the jury based its verdict.

■■ The defendant was specifically identified as being at the scene by: Chon Morales, who identified the defendant as one of the two men who were in the tavern attempting to sell a radio; Robert Evans, who saw the defendant and Tyrone Barnes walk into the tavern and come out running a short time later; and Fernando Ayala, the owner of the tavern and bartender on the night in question, who identified the defendant as the man who was swinging the cane when he came into the tavern. Thus, the jury had sufficient evidence before it to make a determination on the issue of fact as to whether the defendant's alibi was believable in light of these positive identifications of the defendant. (*People v. Toles* (1975), 30 Ill. App. 3d 837, 335 N.E.2d 188.) The jury's determination, in light of the evidence disclosed in this record, does not raise a reasonable doubt as to the defendant's guilt, and we will not interfere with the jury's verdict merely because some of the evidence may be conflicting. (*People v. Polk* (1973), 10 Ill. App. 3d 408, 294 N.E.2d 113.) Accordingly, we find the evidence proves beyond a reasonable doubt that the defendant was present at the scene of this crime.

Defendant also contends that there was no evidence introduced to establish that the cane gun was capable of firing bullets or that the defendant actually fired this cane gun. Defendant's argument is without merit.

There was specific expert testimony of Donald Verbeke, a firearms expert, that several varieties of this specific cane gun were in existence and were capable of firing bullets. Mr. Verbeke further testified that if such a gun were fired by air pressure, no flash would be emitted and no shells would be ejected. Thus, this specific expert testimony established that a cane-like gun was capable of being constructed that would fire bullets.

■■■ The testimony of David Ayala and the victim, Irma Morales, also conclusively proves that the defendant was the one who fired this cane gun. Mr. Ayala made a positive photographic identification of the defendant, and Irma Morales made an in-court identification of the defendant as the man who fired the shots from what appeared to be a cane gun. It was for the jury to determine the weight and credibility to be given these identifications and other testimony, including the defendant's conflicting theory that such a cane gun would be incapable of firing bullets and that he did not fire the cane gun. Its verdict will be sustained on appeal unless it is contrary to the manifest weight of the evidence. (*People v. Holverson* (1975), 32 Ill. App. 3d 459, 336 N.E.2d 88.) This rule

well applies in the instant case since the verdict was based on evidence which clearly proved the defendant guilty of aggravated battery beyond a reasonable doubt.

For the above reasons, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

NASH and WOODWARD, JJ., concur.